## Bonnie McMurphy, et al. v. State of Vermont and Town of Rutland

[757 A.2d 1043]

No. 98-499

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed June 2, 2000

---

*James W. Runcie* of *Ouimette & Runcie*, Vergennes, for Plaintiffs-Appellants.

*William H. Sorrell*, Attorney General, and *Cathy Nelligan Norman* and *Scott A. Whitted*, Assistant Attorneys General, Montpelier, for Defendant-Appellee State of Vermont.

*Joseph A. Farnham* of *McNeil, Leddy & Sheahan*, Burlington, for Defendant-Appellee Town of Rutland.

**Morse, J.** In this wrongful death action following the death of their daughter in an automobile accident, plaintiffs Bonnie McMurphy and James Hart appeal a summary judgment ruling that defendants State of Vermont and Town of Rutland were immune from suit. Plaintiffs argue that, under the Tort Claims Act, the State waived its sovereign immunity, and, by purchasing excess liability insurance, Rutland waived its municipal immunity up to $1,850,000. Plaintiffs argue, in the alternative, that Rutland is liable under the theory of breach of contract, a claim that is not subject to immunity. We affirm in part, reverse in part, and remand.

Plaintiffs are parents of Shannah Hart, who died in a motor vehicle accident in Rutland on December 7, 1995. The accident occurred at the intersection of Town Highway No. 1 (Post Road) and U.S. Route 7. The deceased, heading southbound on Post Road, drove through the intersection and collided with a pickup truck traveling northbound on Route 7. The State designed and built the intersection, completing the work in 1981. At that time, the State contracted with Rutland to assume responsibility for maintaining the intersection.

Plaintiffs individually and McMurphy, as administratrix of her daughter's estate, sued, claiming that the State failed to properly design and construct the intersection and Rutland failed to adequately maintain it. Post Road and Route 7 intersect at a relatively narrow angle. Post Road's southbound lane curves sharply to the

right, so that its end point, which is marked by a stop sign, forms a "T" with Route 7. Traffic traveling northbound from Route 7 onto Post Road bypasses this "T" via a one-way exit lane, which routes traffic directly from the northbound lane of Route 7 onto Post Road's northbound lane. Plaintiffs believed that those traveling southbound on Post Road may easily mistake this one-way, northbound exit ramp as a two-way continuation of Post Road, rather than follow Post Road's sharp turn to the right to its end. They alleged that the intersection was negligently designed, constructed, and maintained, particularly in that it lacked the necessary and appropriate warning signage.

The superior court granted the State's motion for summary judgment, finding no issues of material fact with regard to whether it negligently failed to comply with design standards. The court similarly granted Rutland's motion for summary judgment, concluding that the Town was immune from suit under the doctrine of municipal immunity and was not liable under a third-party beneficiary theory for breach of its contract with the State to maintain the intersection. This appeal followed.

## I. Sovereign Immunity

### A. The State

"Sovereign immunity protects the state from suit unless immunity is expressly waived by statute." *LaShay v. Department of Social & Rehabilitation Servs.*, 160 Vt. 60, 67, 625 A.2d 224, 228 (1993). Under 12 V.S.A. § 5601, the Tort Claims Act, Vermont has expressly waived immunity from certain lawsuits: "The state of Vermont shall be liable for injury to persons or property or loss of life caused by the negligent or wrongful act or omission of an employee of the state while acting within the scope of employment . . . ." 12 V.S.A. § 5601(a). Subsection (e)(8) of the Act, however, declares that waiver does *not* apply to "[a]ny claim arising from the selection of or purposeful deviation from a particular set of standards for the planning and design of highways." *Id.* § 5601(e)(8).

The trial court ruled that the State was entitled to judgment as a matter of law based on sovereign immunity preserved under subsec-

tion (e)(8).[1] Plaintiffs challenge that ruling, arguing that the statute does not shelter the State from suits alleging that it negligently failed to comply with a given set of design standards. We agree.

■ When we interpret a statute, "our obligation is to effectuate the intent of the Legislature." *Brennan v. Town of Colchester*, 169 Vt. 175, 177, 730 A.2d 601, 603 (1999). Our first step is to look at the statute's language with the presumption that the Legislature intended the plain, ordinary meaning of the language. See *id.* We presume that language is inserted advisedly and that the Legislature did not intend to create surplusage. See *Payea v. Howard Bank*, 164 Vt. 106, 107, 663 A.2d 937, 938 (1995). We also consider the reason and spirit behind the statute as well as its effects and consequences. See *In re P.S.*, 167 Vt. 63, 70, 702 A.2d 98, 102 (1997).

As noted, under subsection (e)(8), the State is immune from "[a]ny claim arising from the selection of or purposeful deviation from a particular set of standards for the planning and design of highways." 12 V.S.A. § 5601(e)(8). This language plainly and ordinarily means that the State is immune from claims arising from the State's choice of highway design standards or its conscious decision to depart from the requirements of chosen standards. To construe the statute as providing the State with comprehensive immunity for highway design would require overlooking this clear and deliberate language. Such a construction would also render the word "purposeful" surplusage. The Legislature would not have specified "purposeful deviation" if it intended to retain immunity for an unintentional deviation as well.

■ We believe that the Legislature did not intend to retain sovereign immunity from *every* claim alleging negligent highway design. Whereas subsection (e)(8) shelters the State from liability for all of its deliberate design decisions, allowing it to design highways in the manner that it sees fit, the statute preserves liability in circumstances where the State has unintentionally failed to comply with the chosen design standards. Thus, if a plaintiff can prove that the State intended to comply with certain standards, but failed to do so, the State would be liable for any injury caused if the plaintiff can also prove that the noncompliance was negligence.

One source for the standards used in the design of the intersection at issue here was the United States Department of Transportation

---

[1] Although plaintiffs' complaint alleged that the State was negligent in both its design and construction of the intersection, the latter issue does not appear in their appellate briefs. Therefore, we deal solely with the issue of design immunity.

Federal Highway Administration's Manual on Uniform Traffic Control Devices (MUTCD). MUTCD sets national standards and guidelines for the use of traffic control signs, signals, and markings. Vermont adopted MUTCD effective March 1973. See 23 V.S.A. § 1025. The Vermont Agency of Transportation drafted the design plans for this intersection in 1976 and 1977 following the standards set forth in MUTCD. In support of its motion for summary judgment, the State submitted the affidavit of an agency employee, who declared: "In choosing the signs to use and their approximate location[,] I followed the [MUTCD]." Thus, the State admittedly designed the intersection with the intention to follow, rather than purposefully depart from, the manual's standards.

To survive summary judgment, however, plaintiffs must raise a material issue of fact as to whether the State actually complied with MUTCD's requirements and, if not, that the State was negligent in failing to do so. See V.R.C.P. 56(e) (once motion for summary judgment is made and supported, nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" to survive motion); *Lussier v. Truax*, 161 Vt. 611, 612, 643 A.2d 843, 844 (1993) (mem.). We hold that plaintiffs did raise such issues of fact.

In order to determine if there exists a material issue of fact as to whether the State complied with the standards set forth in MUTCD, we look at the manual itself. In explaining the purpose of traffic signs, MUTCD provides:

> The purpose of traffic control devices and warrants for their use is . . . to provide such guidance and warnings as are needed to insure the safe and in[]formed operation of individual elements of the traffic stream.

> Traffic control devices are used to direct and assist vehicle operators in the guidance and navigation tasks required to traverse safely any facility open to public travel.

Federal Highway Administration, U.S. Dept. of Trans., Manual on Uniform Traffic Control Devices 1A-1 (1988). The manual also states that, in order to be effective, traffic signs should meet the following basic requirements: (1) fulfill a need; (2) command the attention and respect of operators; (3) convey a clear, simple meaning; and (4) give operators adequate time for response. See *id*. Furthermore, with regard to warning signs, the manual dictates that such signs "should provide adequate time for the driver to perceive, identify, decide, and perform any necessary maneuver." *Id*. 2C-3.

■ In their supporting memoranda, plaintiffs submitted the affidavit of their expert, who stated that, under the manual, the State should have placed signage warning those traveling southbound on Post Road of the intersection's sharp curve to the right. He also contended that one particular sign that faced these travelers — a "Stop Ahead" sign bearing a straight arrow — was directly contradictory to the layout of the intersection. Plaintiffs' expert calls into question whether the signage, or lack thereof, conveyed to southbound drivers a clear, simple understanding of the intersection's layout and provided adequate time for them to perceive, identify, decide, and perform the necessary maneuvering required to safely navigate the intersection. We find, therefore, that plaintiffs have established that there is a material issue of fact concerning the State's compliance with the principles of MUTCD, and whether any noncompliance was negligence. Thus, the court erred in granting summary judgment to the State.

## B. Town of Rutland

■ Plaintiffs next contend that the doctrine of sovereign immunity does not protect Rutland from suit. "Traditionally, courts have held municipalities liable only where the negligent act arises out of a duty that is proprietary in nature as opposed to governmental." *Hillerby v. Town of Colchester*, 167 Vt. 270, 272, 706 A.2d 446, 447 (1997). Municipalities may, however, waive immunity by purchasing liability insurance. See 29 V.S.A. § 1403. Plaintiffs do not argue that Rutland's maintenance of the intersection is proprietary;[2] rather, plaintiffs contend that Rutland has waived immunity to the extent that it has purchased excess liability insurance, also referred to as "reinsurance."

A municipal corporation may, in the name of a municipality, contract with an insurance company to secure all forms of liability insurance. See 24 V.S.A. § 1092. When a municipal corporation purchases a liability insurance policy under § 1092, "it waives its sovereign

---

[2]This Court has long held that the maintenance of highways is a governmental function. See *Town of South Burlington v. American Fidelity Co.*, 125 Vt. 348, 350, 215 A.2d 508, 510 (1965) ("towns are protected from liability for insufficiencies in streets"); *Lemieux v. City of St. Albans*, 112 Vt. 512, 515, 28 A.2d 373, 375 (1942), *overruled on other grounds by Marshall v. Town of Brattleboro*, 121 Vt. 417, 425, 160 A.2d 762, 767 (1960) (cities and towns are not liable for damages resulting from defects in highways); see also *Gretkowski v. City of Burlington*, 50 F. Supp. 2d 292, 294, 296 (D. Vt. 1998) (noting that this Court "has affirmed the notion that maintenance of streets and sidewalks is a governmental function"), *aff'd*, 181 F.3d 82 (2d Cir. 1999).

immunity from liability to the extent of the coverage of the policy and consents to be sued." 29 V.S.A. § 1403. The Legislature, however, has specifically authorized municipalities to enter into intermunicipal agreements for liability insurance purposes, see 24 V.S.A. § 4942, participation in which does *not* constitute a waiver of immunity. See *id.* § 4946. The statute specifically provides that:

> two or more municipalities may form an association under the laws of this state to develop and administer an intermunicipal risk management program, having as its purposes reducing the risk of its members; safety engineering; distributing, sharing, and pooling risks; *acquiring insurance, excess loss insurance, or reinsurance*; and processing, paying, and defending claims against the member of such association.

*Id.* § 4942 (emphasis added). Furthermore, such "[p]articipation by a municipality in an agreement or association established hereunder shall not create joint and several liability as a result of any act or omission of any other municipality or association, *nor shall such participation constitute a waiver of sovereign immunity under 29 V.S.A. § 1403." Id.* § 4946 (emphasis added).

Rutland was a member of the Property and Casualty Intermunicipal Fund (PACIF), which is managed by the Vermont League of Cities and Towns (VLCT). Through its VLCT PACIF membership, Rutland had liability coverage in the amount of $2,000,000, the first $150,000 of which was derived from PACIF funds. Commercial carriers, with which VLCT PACIF contracted, provided the excess or reinsurance. Although plaintiffs concede that the first $150,000 of Rutland's coverage does not constitute a waiver of immunity under § 1403, they argue that immunity is waived to the extent of the reinsurance. In other words, according to plaintiffs, the reinsurance provided by commercial carriers is not the same type of "self-insurance" as that derived from VLCT PACIF funds, the latter being the only type of insurance the Legislature exempted from effectuating waiver under § 1403. Therefore, plaintiffs argue that Rutland has waived immunity to the extent of $1,850,000 for any claim in excess of $150,000.

Plaintiffs' argument is defeated by a plain reading of the statutory scheme. A waiver of a municipality's immunity under § 1403 occurs when a municipal corporation itself purchases liability insurance. Such waiver does not occur when insurance or reinsurance

is acquired through participation in an intermunicipal insurance agreement such as VLCT PACIF. It is the manner by which the insurance is obtained, not the commercial nature of the provider, that is determinative of waiver. Since Rutland obtained its liability coverage through membership in VLCT PACIF, it did not waive its immunity from plaintiffs' suit.

## II. Third-Party Beneficiary Claim

Plaintiffs claim that Rutland is liable under a breach-of-contract theory, which is not barred by municipal tort immunity. Specifically, plaintiffs assert that Rutland breached its contractual agreement with the State to maintain the intersection, and that this breach caused or contributed to the cause of their daughter's death.

In order to sue on the contract between the State and Rutland, plaintiffs must establish that their daughter was a third-party beneficiary to the contract rather than an incidental beneficiary. See Restatement (Second) of Contracts § 315 (1981) ("An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee."). The determination of whether a party may be classified as a third-party beneficiary, as opposed to an incidental beneficiary, is based on the original contracting parties' intention. See *Morrisville Lumber Co. v. Okcuoglu*, 148 Vt. 180, 184, 531 A.2d 887, 890 (1987).

We find no intention on the part of either the State or Rutland to directly benefit third parties or to confer a private cause of action. The contract at issue reads:

> Whereas, [the State and Rutland] . . . mutually agree that the maintenance and repair of Town Highways should be under the control of the Town, pursuant to Title 19, V.S.A., Chapter 9, § 931. It is further understood and agreed that the giving over of said maintenance and repair is in the best public interest.

Through this contract, neither defendant intended to confer upon private parties a cause of action for negligent maintenance of the intersection. Rather, the object of the contract was to pass to Rutland the responsibility of maintaining the intersection in accordance with the policy that towns should control their town highways, as illustrated in 19 V.S.A. § 931, recodified at 19 V.S.A. § 310(a) ("A town shall keep its . . . highways and bridges in good and sufficient repair during all seasons of the year.").

■ We believe, furthermore, that the language "best public interest" reflected an intention to provide the most effective, convenient, and economical method of highway maintenance to the benefit of the State, Rutland, and the public at large. See, e.g., *Matternes v. City of Winston-Salem*, 209 S.E.2d 481, 489 (N.C. 1974) (where city assumed responsibility for dangerous condition in street under contract with state, "the intention of the parties in making this contract was none other than to provide the most convenient and economical method for doing the necessary maintenance work"). Obviously, the public benefits from properly maintained highways; however, the most effective, convenient, and economical method of doing so is not for their direct benefit, but for their incidental benefit. See, e.g., *Estate of Jiggetts v. City of Gastonia*, 497 S.E.2d 287, 291 (N.C. Ct. App. 1998) ("To maintain a suit for breach of contract on a third-party beneficiary theory, plaintiffs must allege . . . 'that the contract was entered into for [their] direct, and not incidental, benefit.'" (quoting *Metric Constructors, Inc. v. Industrial Risk Insurers*, 401 S.E.2d 126, 129 (N.C. Ct. App. 1991) (alteration in original)). There was no intention manifested in the language of the contract that either the State or Rutland intended to confer a private cause of action. Therefore, plaintiffs' daughter was not a third-party beneficiary to the contract.

Plaintiffs attempt to avoid the intent-to-benefit analysis by citing the Restatement of Contracts, which provides:

> [A] promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform unless
>
> . . . .
>
> (b) the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach.

Restatement (Second) of Contracts § 313(2). Plaintiffs argue that, had the State retained responsibility for maintaining the intersection, it would have been liable for its failure to do so. See *Peters v. State*, 161 Vt. 582, 583-84, 636 A.2d 340, 341-42 (1993) (mem.) (under private-analog test of Tort Claims Act, State waived immunity from

suit alleging negligent placement of highway warning signs). Thus, according to plaintiffs, under § 313(2)(b), Rutland, the promisee, is subject to liability for negligent maintenance the same as the State, the promisor.

We are not persuaded by plaintiffs' reliance on the Restatement. First, the comment to § 313 states the general rule that individual members of the public are incidental beneficiaries of government contracts:

> Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested. In case of doubt, a promise to do an act for or render a service to the public does not have the effect of a promise to pay consequential damages to individual members of the public unless the conditions of Subsection (2)(b) are met.

Restatement (Second) of Contracts § 313 cmt. a. This is not a case of doubt. As stated above, we find no intention in the contract to treat individuals as other than incidental beneficiaries.

Second, § 313 deals primarily with contracts between municipalities and government contractors or public service corporations, not contracts between state and local governments. See, e.g., 13 R. Lord, Williston on Contracts § 37:33, at 214-15 (4th ed. 2000) (discussing § 313 under heading "Members of Public as Third Party Beneficiaries of Contracts Between Public Service Corporation and Municipality," and referring to § 313 cmt. a as referring to "contracts of the kind under discussion"). Nevertheless, plaintiffs urge us to accept an illustration to § 313 as dispositive of the issue of Rutland's waiver of immunity:

> A, a municipality, owes a duty to the public to keep its streets in repair. B, a street railway company, contracts to keep a portion of these streets in repair but fails to do so. C, a member of the public, is injured thereby. He may bring actions against A and B and can recover judgment against each of them.

Restatement (Second) of Contracts § 313 illus. 5. Although Rutland, as promisee, was in a position analogous to that of a corporation, the contract at issue here was one between two governments, which, as we discuss below, implicates governmental immunity considerations not applicable to a contract between a municipality and a corporation.

The Vermont Legislature treats state and local governments differently with respect to immunity. See *Hillerby*, 167 Vt. at 273-74, 706 A.2d at 447. Under the Tort Claims Act, which applies solely to state waiver of tort immunity, see *id.* at 274, 706 A.2d at 448, whether the State has waived immunity for a given cause of action is determined by the private-analog test. See *id.* at 272, 706 A.2d at 447. See also 12 V.S.A. § 5601(a) (State is "liable for injury . . . caused by the negligent or wrongful act or omission of an employee of the state while acting within the scope of employment, under the same circumstances, in the same manner and to the same extent as a private person would be liable to the claimant"). Waiver of municipal immunity, by contrast, is determined by the governmental/propri-etary distinction. See *Hillerby*, 167 Vt. at 272, 706 A.2d at 447. We would undermine the distinction between state and municipal immu-nity if we allowed plaintiffs' interpretation of § 313 to control our analysis. This Court has acknowledged that "the abrogation and replacement of the distinction are matters for the Legislature, not the courts." *Hillerby*, 167 Vt. at 272, 706 A.2d at 446. Therefore, municipal immunity prevails, and the court properly rejected plaintiffs' contract theory on summary judgment.

*Affirmed in part, reversed in part, and remanded.*