*Nesti v. Vermont Agency of Transp.*, No. 1096-12-18 Cncv (Toor, J., Aug. 20, 2019).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

FRANCES NESTI,
  Plaintiff

  v.

VERMONT AGENCY OF
TRANSPORTATION,
  Defendant

Docket No. 1096-12-18 Cncv

RULING ON DEFENDANTS' MOTION TO DISMISS

This case arises from the expansion of Route 7 at the South Burlington/Shelburne town line, and subsequent water damage to Plaintiff Frances Nesti's nearby property from the rebuilt roadway drainage infrastructure. Plaintiff brings this action against the Agency of Transportation ("VTrans")in connection with its reconstruction of Route 7.[1] She alleges five claims: nuisance, trespass, takings, ejectment, and removal of lateral support. Defendants move to dismiss on grounds of statute of limitations and immunity. The court heard oral argument on August 5, 2019. Alexander J. LaRosa, Esq. represents Plaintiff. Robert F. McDougall and Ryan P. Kane, Esqs. represent Defendants.

Alleged Facts

The facts as alleged by Plaintiff are as follows. Plaintiff owns property located at 2 Pine Haven Shore Lane in Shelburne, downhill and west of Route 7. Am. Compl. ¶ 1. Her claims arise from the State's reconstruction of Route 7 in South Burlington and Shelburne

---

[1] Plaintiff also named the Agency of Natural Resources Department of Environmental Conservation, but at oral argument agreed to the dismissal of DEC from the case.

in 2005 and 2006. Id. ¶¶ 28–42. The State significantly changed the pre-existing drainage of surface waters as part of the project, which resulted in stormwaters being redirected toward and through Plaintiff's property. Id. ¶¶ 40–55.

"Immediately after VTrans completed construction in . . . 2006, Plaintiff saw a massive increase in stormwater runoff" in the dry depression that ran through her property. Id. ¶ 53. She claims that this stormwater has carried pollutants from the road to her property and caused significant erosion. Id. ¶¶ 56–79. More specifically, Plaintiff alleges the stormwater has eroded what had been a "shallow depression" into a "20 foot wide, 20 foot deep[,] steep sided, eroded[,] and unstable ravine." Id. ¶ 61. That ravine now threatens her house and driveway, under which Plaintiff's utility lines are buried. Id. ¶¶ 62–79. The complaint includes numerous photographs that depict the extent of the erosion.

Discussion

Plaintiff asserts claims for nuisance, trespass, the taking of an easement without just compensation, ejectment, and removal of lateral support.[2] The State moves to dismiss, arguing that (1) all the claims are time-barred and barred by sovereign immunity, and (2) the two new counts fail to state a claim under Rule 12(b)(6).

I.       Statute of Limitations

The original complaint was filed in December 2018. The State contends that the nuisance, trespass, and takings claims are all subject to the general six-year statute of limitations of 12 V.S.A. § 511. Because the amended complaint alleges that Plaintiff "saw a massive increase in stormwater runoff" on her property "[i]mmediately after VTrans

---

[2] The latter two counts, Counts IV and V, were added in the amended complaint.

completed construction in . . . 2006," Am. Compl. ¶ 53, the State argues that the action accrued in 2006 and is now time-barred. Plaintiff contends that the 15-year statute of limitations for "action[s] for the recovery of lands" applies to those claims. *See* 12 V.S.A. § 501.

Plaintiff's argument, while creative, is ultimately unavailing. "[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his land, while nuisance is an interference with his use and enjoyment of it." John Larkin, Inc. v. Marceau, 2008 VT 61, ¶ 8, 184 Vt. 207 (quoting W. Keeton et al., Prosser and Keeton on the Law of Torts § 87, at 622 (5th ed. 1984)). A "taking" typically involves a "permanent physical occupation or temporary incursions . . . amounting to an easement . . . ." Regan v. Spector, 2016 VT 116, ¶ 19, 203 Vt. 463; *see also* Ondovchik Family Ltd. P'ship v. Agency of Transp., 2010 VT 35, ¶¶ 16–18, 187 Vt. 556. All of these causes of action are subject to the general six-year limitations period of 12 V.S.A. § 511. *See* Dep't of Forests, Parks & Recreation v. Town of Ludlow Zoning Bd., 2004 VT 104, ¶ 6, 177 Vt. 623 ("taking" or "inverse condemnation" claim, which accrues on "the date on which the government physically interferes with the access"); Alpstetten Ass'n, Inc. v. Kelly, 137 Vt. 508, 512–13 (1979) (nuisance); Bostock v. City of Burlington, No. S1337-03 CnC, slip copy at 13–14, 2010 WL 2259141 (Vt. Super. Ct. Jan. 27, 2010) (Toor, J.) (nuisance and trespass); The Nature Conservancy v. Ames, No. 6-1-05 Excv, at 3, 2006 WL 7089440 (Vt. Super. Ct. Apr. 25, 2006) (Cook, J.) (trespass).

Plaintiff attempts to distinguish the above caselaw. She argues that Ludlow involved a regulatory taking rather than a physical invasion, but Ludlow clearly stated that the six-year limitations period applies to all "eminent domain and inverse condemnation proceedings." 2004 VT 104, ¶ 6. She contends that Kelly did not contain a

claim for nuisance. However, the counterclaim-plaintiff in <u>Kelly</u> alleged a complete and wrongful interruption to his water supply, which the Court characterized as a "tortious act resulting in an interference with the use and enjoyment of his property," the very definition of nuisance. <u>Kelly</u>, 137 Vt. at 513. Plaintiff further asserts that application of the 15-year statute of limitations is consistent with <u>Lorman v. City of Rutland</u>, 2018 VT 64, a case filed in 2015 which involved sewage backups on plaintiffs' property between 1983 and 2014. <u>Id</u>. ¶ 37. The Court affirmed the trial court's grant of summary judgment for the city on grounds of immunity and insufficient evidence to prove a taking, and never addressed the statute of limitations. <u>Id</u>. ¶¶ 23–24, 27–28, 33, 37. Plaintiff offers no persuasive basis for applying the 15-year statute of limitations in 12 V.S.A. § 501 to any of these claims.[3] The claims are instead subject to the 6-year statute of limitations in section 511.

Plaintiff next asserts that, even if the six-year period applies, the trespass and nuisance claims are not time-barred due to the continuing tort doctrine. That doctrine "allows a plaintiff to support his or her cause of action with events that occurred outside of the limitations period by delaying the accrual of a claim until the date of the last injury or the date the tortious acts cease." <u>Gettis v. Green Mountain Econ. Dev. Corp.</u>, 2005 VT 117, ¶ 23, 179 Vt. 117 (quotation omitted). The doctrine "requires at least two elements: a continuing wrong, and some action contributing to the wrong that occurred within the

_____

[3] In a case not cited by Plaintiff, the South Dakota Supreme Court held that nuisance and takings claims alleging periodic flooding from storm sewer system were governed by the 20-year period for adverse possession, rather than the 6-year limitations period for trespass actions. <u>City of Sioux Falls v. Miller</u>, 492 N.W.2d 116, 120 (S.D. 1992). However, the South Dakota Court had previously held, on numerous occasions, that the 20-year period for adverse possession was applicable to both takings claims and "where property rights are damaged in the name of the public, regardless of the underlying tort claim." <u>Id</u>. (citing prior cases). The Vermont Supreme Court has never made such a holding.

4

limitations period." Id. ¶ 25. The Vermont Supreme Court has neither adopted nor rejected the continuing tort doctrine. Id. ¶ 24.[4] This court discussed the doctrine in Bostock, where the plaintiffs claimed that the City of Burlington flooded their property with water, pollutants, and sewage due to construction of a highway connector, wildlife sanctuary, and stormwater project. No. S1337-03 CnC, slip copy at 5–6. The court ruled there that even assuming the doctrine is available, plaintiffs did not meet their summary judgment burden to produce evidence showing that the doctrine applied in that case. Id. at 17–18.[5]

Assuming the continuing tort doctrine is available in Vermont, the key inquiry becomes whether the alleged trespass or nuisance is continuous or permanent. *See* D. Dobbs, The Law of Torts § 57 (2d ed. June 2019 update) ("If the defendant's trespass or nuisance continues to cause harm to the plaintiff's interests in land, courts usually begin by classifying the invasion as either permanent (completed) or temporary (continuing)."). Dobbs writes:

> In theory, if a nuisance is deemed permanent, there is only one unceasing invasion of the plaintiff's interests and only one cause of action. This necessarily arises when the invasion first began or was first manifest. The statute of limitations on the one cause of action must, then, begin running from the time it became manifest. In contrast, if the nuisance or trespass is "temporary," or "continuous," a new cause of action arises day by day or injury by injury, with the result that the plaintiff in such a case can always recover for such damages as have accrued within the statutory period immediately prior to suit.

---

[4] The Court discussed the concept of "continuing trespass" in S. L. Garand Co. v. Everlasting Mem'l Works, Inc., 128 Vt. 359 (1970) and Canton v. Graniteville Fire Dist. No. 4, 171 Vt. 551, 552 (2000) (mem.), although neither the "continuing tort doctrine" nor the statute of limitations were at issue.

[5] This court also declined to conclude that the Gettis requirement that a wrongful act occur within the limitations period was dispositive, even though there was no such act within the limitations period in Bostock. No. S1337-03 CnC, slip copy at 15. The court observed that the Gettis Court had not analyzed the continuing tort doctrine in the specific context of trespass and nuisance claims, which was an unsettled area of law, and that the plaintiffs had pointed to differences between negligence claims and trespass and nuisance claims that might obviate the Gettis requirement. Id. at 15–16.

D. Dobbs, Remedies § 5.4, at 343 (1973) (footnotes omitted). Courts have reached varying and sometimes conflicting conclusions as to what is "permanent" and what is "temporary." *See* D. Dobbs, The Law of Torts § 57, at 115–16 (2001) ("Conflicting decisions and factual variety make statement of a general rule perilous. . . . It is not easy to find harmony in the case results."). For example, some courts focus on the tortious conduct or act, while other focus on the nature of the nuisance or trespass. *Compare* Carpenter v. Texaco, Inc., 419 Mass. 581, 583, 646 N.E.2d 398, 399 (Mass. 1995) ("a continuing trespass or nuisance must be based on recurring tortious or unlawful conduct and is not established by the continuation of harm caused by previous but terminated tortious or unlawful conduct") *with* Jacques v. Pioneer Plastics, Inc., 676 A.2d 504, 507 (Me. 1996) ("we have defined a nuisance as continuing when the thing that constitutes the nuisance is not of such a permanent nature that it can not readily be removed and thus abated") (quotation omitted).

The "permanent" versus "temporary" determination often involves a number of factors, including whether the invasion can be terminated or abated, and whether the cost of termination is wasteful or oppressive. Dobbs, The Law of Torts § 57 at 117–18. One of the better discussions of this analysis comes from Maine's high court:

> In determining the distinction between "permanent" and "continuing" one commentator has considered the following three factors:
>
> > (1) is the source of the invasion physically permanent, i.e., is it likely in the nature of things, to remain indefinitely? (2) is the source of the invasion the kind of thing an equity court would refuse to abate by injunction because of its value to the community or because of relations between the parties? (3) which party

> seeks the permanent or prospective measure of damages?
>
> Dan B. Dobbs, <u>Handbook on the Law of Remedies</u> § 5.4, p. 338 (1973). Professor Dobbs goes on to state that "a nuisance or trespass is usually not regarded as a permanent one unless it is physically permanent or likely to continue indefinitely." <u>Id</u>. Likewise, many courts have considered the question of abatability to be the deciding factor in their determination of whether a nuisance or trespass is continuous or permanent.

<u>Jacques v. Pioneer Plastics, Inc.</u>, 676 A.2d 504, 507–08 (Me. 1996) (citing <u>Beatty v. Washington Metro. Area Transit Auth.</u>, 860 F.2d 1117, 1122 (D.C. Cir. 1988) (continuing nuisance one which is abatable, or intermittent or periodical); <u>Reynolds Metals Co. v. Wand</u>, 308 F.2d 504, 508 (9th Cir. 1962) (aluminum plan's emissions permanent nuisance because unlikely they would be abated or enjoined); <u>City of Sioux Falls v. Miller</u>, 492 N.W.2d 116, 119 (S.D. 1992) (periodic flooding from storm sewer system permanent nuisance because unlikely to be enjoined due in part to value to community); <u>Racine v. Glendale Shooting Club, Inc.</u>, 755 S.W.2d 369, 374 (Mo. Ct. App. 1988) (recognizing that distinguishing feature between permanent and temporary nuisance is its abatability)).

In the summary judgment ruling in <u>Bostock</u>, this court held that plaintiffs "failed to come forward with evidence that their alleged injury is abatable, or that the cost of terminating the alleged nuisance or trespass is neither wasteful nor oppressive." <u>Bostock</u>, No. S1337-03 CnC, slip copy at 17. Unlike <u>Bostock</u>, however, this case is still at the pleading stage. Plaintiff alleges that "a number of options exist[] to abate the damage to [her] property," the damage is "not necessary," and that "[a]lternatives exist to reduce flows, redirect stormwater[,] and abate pollution." Am. Compl. ¶¶ 85, 101. On a motion to dismiss, the court must accept these allegations as true. They are sufficient to create a

7

question of fact regarding whether the invasion of water can be terminated or abated, and the reasonableness of the cost involved in such termination. Whether an invasion "can be abated" is not an exclusive factor, but it is "central" to the temporary versus permanent determination. Dobbs, The Law of Torts § 57. At this stage, the court cannot definitively resolve this question.

At oral argument, VTrans argued that if an invasion is the result of lawful authority, socially beneficial, and intended to be permanent, that ends the inquiry, citing Hoery v. United States, 64 P.3d 214, 220 (Colo. 2003). However, further discussion in that case makes clear that the issue is not so simple. For example, Hoery cited cases in which courts have found continuing torts when the impacts were continuing despite the fact that the defendant's actions took place years before, including cases involving government defendants. Id. at 221.

Moreover, while the State focuses on the fact that the Route 7 road project is lawful, beneficial, and intended to be permanent, Nesti argues that the increased flow of stormwater is the act the court should focus on. In other words, can the court say at this stage of the proceedings that the stormwater discharged is itself "beneficial," as opposed to the road? Given the lack of clarity in the law in this area, these are issues not appropriate for resolution at this stage of the case based solely on the pleadings. *See* Montague v. Hundred Acre Homestead, LLC, 2019 VT 16, ¶ 11 ("We are particularly wary of dismissing novel claims because '[t]he legal theory of a case should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations.'") (quoting Ass'n of Haystack Prop. Owners, Inc. v. Sprague, 145 Vt. 443, 447 (1985)).

In sum, the takings claim is barred by the six-year statute of limitations, but the court cannot determine whether the trespass and nuisance claims are "continuing torts" for limitations purposes on the current record.

## II. Sovereign Immunity

The State asserts that, even if the trespass and nuisance claims are not time-barred, they are barred by the doctrine of sovereign immunity to the extent they seek money damages.[6] "Sovereign immunity bars suits against the State unless immunity is expressly waived by statute." Sabia v. State, 164 Vt. 293, 298 (1995) (citing LaShay v. Department of Social & Rehabilitation Servs., 160 Vt. 60, 67 (1993)). The State has waived its immunity to certain types of suits under the Vermont Tort Claims Act:

> The state of Vermont shall be liable for injury to persons or property . . . caused by the negligent or wrongful act or omission of an employee of the state while acting within the scope of employment, under the same circumstances, in the same manner and to the same extent as a private person would be liable to the claimant . . . .

12 V.S.A. § 5601(a). The primary purpose of the tort claims act is "to waive sovereign immunity for recognized causes of action, particularly for common law torts." Zullo v. State, 2019 VT 1, ¶ 18 (citing Kennery v. State, 2011 VT 121, ¶ 26, 191 Vt. 44). There are, however, exceptions to the waiver. 12 V.S.A. § 5601(e). If an exception applies, then the State remains immune. "In order to bring a tort claim for damages against the State, the plaintiff must demonstrate that . . . no exception to the State's waiver of sovereign

---

[6] At oral argument, the State conceded that sovereign immunity applies only to claims for money damages, but not to claims for equitable relief. See, e.g., Coleman v. Court of Appeals of Maryland, 566 U.S. 30, 35 (2012) )"[a] foundational premise of the federal system is that States, as sovereigns, are immune from suits for *damages*, save as they elect to waive that defense.") (emphasis added); Wool v. Menard, 2018 VT 23, ¶ 8 ("Sovereign immunity protects the State and its components from liability for *money damages* unless immunity is waived by statute.") (emphasis added); Am. Trucking Associations, Inc. v. Conway, 152 Vt. 363, 376 (1989) (holding that immunity not applicable because "this is not a suit for money damages against the state"). Thus, the immunity question before the court relates only to money damages.

immunity applies." <u>Wool v. Menard</u>, 2018 VT 23, ¶ 9 (citing <u>Mellin v. Flood Brook Union Sch. Dist.</u>, 173 Vt. 202, 218–19 (2001)). Here, the State argues that two of these exceptions preserve its immunity.

### A. Discretionary Function Immunity

The State first points to the discretionary function exception, which protects the State from any claim "based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a State agency or an employee of the State, whether or not the discretion involved is abused." 12 V.S.A. § 5601(e)(1). The purpose of that exception is "to assure that courts do not invade the province of coordinate branches of government through judicial second guessing of legislative or administrative policy judgments." <u>Lorman v. City of Rutland</u>, 2018 VT 64, ¶ 13 (citing <u>Estate of Gage v. State</u>, 2005 VT 78, ¶ 4, 178 Vt. 212).

The Court established a two-part test for applying the discretionary function exception, asking whether "the acts involved [were] discretionary in nature, involving an element of judgment or choice" and if so, "whether that judgment involved considerations of public policy which the discretionary function exception was designed to protect." <u>Lorman v. City of Rutland</u>, 2018 VT 64, ¶ 14 (citing <u>Estate of Gage</u>, 2005 VT 78, ¶ 5). When a government agent is authorized to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." <u>Searles v. Agency of Transp.</u>, 171 Vt. 562, 563 (2000) (mem.) (quoting <u>United States v. Gaubert</u>, 499 U.S. 315, 324 (1991)). "For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in . . . policy . . . ." <u>Id</u>. (quoting <u>Gaubert</u>, 499 U.S. 315, 324–25).

The State contends that "the facts in the Amended Complaint are sufficient" to determine that the discretionary function exception applies. State's Reply at 13. The court disagrees. To determine whether a decision is "grounded in policy," the court needs to know what decision we are talking about, and who made it. *See*, *e.g.*, Johnson v. Agency of Transp., 2006 VT 37, ¶ 13, 180 Vt. 493 (mem.) (quoting Gaubert, 499 U.S. at 335–36) (Scalia, J., concurring) ("The dock foreman's decision to store bags of fertilizer in a highly compact fashion is not protected by this exception because, even if he carefully calculated considerations of cost to the Government vs. safety, it was not his responsibility to ponder such things; the Secretary of Agriculture's decision to the same effect *is* protected, because weighing those considerations is his task.") (emphasis in original). It may also be significant whether the decision was guided by mandatory policies or not. Id. ¶ 6. At this stage of the case, the court has insufficient information with which to resolve this question.

## B. Highway Planning and Design Exception

The second exception to which the State points is that for "[a]ny claim arising from the selection of or purposeful deviation from a particular set of standards for the planning and design of highways." 12 V.S.A. § 5601(e)(8). This language "means that the State is immune from claims arising from the State's choice of highway design standards or its conscious decision to depart from the requirements of chosen standards," but it does not provide the State with "comprehensive immunity for highway design . . . ." McMurphy v. State, 171 Vt. 9, 12 (2000). As the Court elaborated:

> Whereas subsection (e)(8) shelters the State from liability for all of its deliberate design decisions, allowing it to design highways in the manner that it sees fit, the statute preserves liability in circumstances where the State has unintentionally failed to comply with *the chosen design standards*. Thus, if a

> plaintiff can prove that the State intended to comply with *certain standards*, but failed to do so, the State would be liable for any injury caused if the plaintiff can also prove that the noncompliance was negligence.

Id.; *see also* Vanderbloom v. State, Agency of Transp., 2015 VT 103, ¶ 6, 200 Vt. 150 (emphasis added).

Plaintiff's claims clearly allege a deliberate highway design decision by VTrans to "alter[] the flow of water so as to collect and funnel a large amount onto Plaintiff's property." Compl. ¶ 94; *see also* id. ¶¶ 95, 105. However, while some of the language in McMurphy is perhaps unintentionally broad, *see* McMurphy, 171 Vt. at 12 ("all . . . deliberate design decisions"), the statutory exception to the State's waiver of immunity applies only to claims "arising from the selection of or purposeful deviation from a *particular set of standards* for the planning and design of highways." 12 V.S.A. § 5601(e)(8) (emphasis added). The amended complaint references no particular set of planning and design *standards*. Instead, the claims deal with a highway design decision to divert stormwater onto Plaintiff's property. The planning and design exception does not provide the State with "comprehensive immunity for highway design . . . ." McMurphy, 171 Vt. at 12.

The court is unable to conclude at this stage whether the discretionary function or highway planning and design exception applies. Accordingly, sovereign immunity is not grounds for dismissal of Plaintiff's claims for monetary damages.[7]

---

[7] Plaintiff also argues that regardless of whether one of the exceptions might otherwise apply, there can be no immunity for the trespass and nuisance claims alleged here because they are *intentional* torts. However, the cases on which she relies involved municipal sovereign immunity, rather than state sovereign immunity. State and municipal immunity are distinct. *See* McMurphy v. State, 171 Vt. 9, 19 (2000) ("The Vermont Legislature treats state and local governments differently with respect to immunity.") (citing Hillerby v. Town of Colchester, 167 Vt. 270, 273–74 (1997)). While municipal immunity is generally determined by looking to the common law governmental/proprietary distinction, the State's immunity under the Tort Claims Act is determined by the private-analog test and the various statutory exceptions in the Act. Id.; *see also* 12 V.S.A. § 5601. The Tort Claims Act waives the State's immunity from liability "for

### III. New Claims in Amended Complaint: Ejectment and Lateral Support

In response to the State's motion to dismiss, Plaintiff filed an amended complaint with two new claims: Count IV, for ejectment, and Count V, alleging the withdrawal of lateral support. Count IV, titled "Ejectment," is framed as an action for the recovery of lands under 12 V.S.A. § 501. Plaintiff alleges that the "incursion from . . . stormwater is not temporary or intermittent," but that "it is continuous, open, [] notorious[,] and without permission" and "has not occurred for 15 years." Am. Compl. ¶¶ 119–21. Plaintiff asks for an "order of ejectment directing VTrans' stormwater elsewhere" and a "declaratory ruling that the State has not obtained an easement by prescription . . . ." Id. ¶ 123.

The State asserts that Count IV is an attempt to salvage the potentially time-barred trespass claim by reframing it as a claim for ejectment, and that the claim fails because the State does not have "possession" of Plaintiff's land. State's Reply at 13–14. The Court

---

injury to persons or property . . . caused by the negligent *or wrongful act or omission* of an employee of the State while acting within the scope of employment . . . ." 12 V.S.A. § 5601(a) (emphasis added). As the State correctly asserts, the statute provides no distinction between claims based on negligence and claims based on intentional acts. While the result might be different for a municipal defendant, the defendants here are state entities, and Plaintiff offers no persuasive basis for applying the reasoning of Lorman and Tarbell to the doctrine of state sovereign immunity.

Plaintiff also contends that immunity does not apply to any case involving damage to land by the State's invasion. Pl.'s Opp'n at 20–21. Plaintiff cites Makela v. State, which states the unremarkable proposition that "[t]he doctrine of immunity from liability does not apply where the injury complained of is the taking of private property for public use without compensation." 124 Vt. 407, 409 (1964). However, the State does not contend that immunity bars the takings claim. The Makela court continued: "This rule is also recognized in cases having to do with damage to property but not with the taking thereof." Id. (citing Haynes v. Town of Burlington, 38 Vt. 350, 360 (1865); Sanborn v. Vill. of Enosburg Falls, 87 Vt. 479, 484 (1914)). Plaintiff infers from this that the immunity doctrine is also inapplicable to the trespass and nuisance claims, because they allege damage to her land.

While the latter sentence quoted from Makela is confusing when taken out of context, it does not support Plaintiff's argument. It seems to refer to indirect takings, such as where the government does not take a property in its entirety, but the property nonetheless suffers damages or a loss in value from the government's actions. *See* Sanborn, 87 Vt. at 484 ("The subjection of land to an easement of the character of a highway is a taking as much as though the absolute title passed."). In any event, neither Makela, Sanborn, nor Haynes suggest that the immunity doctrine does not apply to the tort claims of trespass and nuisance.

agrees. "To recover in ejectment, the plaintiff must prove the defendant in possession of the premises at the commencement of the action." Lynch v. Town of Rutland, 66 Vt. 570, 573 (1894). "[E]jectment does not lie" for uses which "do[] not carry the right of exclusive possession . . . ." Scampini v. Rizzi, 106 Vt. 281, 287 (1934). Plaintiff does not allege any possessory interest or claim of title by the State. Any relief to which Plaintiff might be entitled from the State's redirection of stormwater through her land must come through the nuisance or trespass claims.

In Count V, Plaintiff alleges that VTrans' stormwater "is taking away the naturally necessary lateral support of [her] land," which is "causing harm to [her] land and things placed on said land." Id. ¶¶ 131–32. She seeks "compensation" and "an order requiring VTrans to restore and stabilize Plaintiff's land . . . ." Id. ¶ 132.

Plaintiff's lateral support claim also fails as a matter of law. Under the lateral support doctrine, "[t]he owner of any land is entitled to have that land supported and protected in its natural condition by the adjoining land," and "[a] landowner who withdraws such support will be held liable for damages." Domina v. Moore, No. 99-163, slip op. at 3 (Vt. May 10, 2000) (unpub. mem.) (citing 9 R. Powell & P. Rohan, Powell on Real Property § 698 (1999)). This court has looked to the Restatement in considering lateral support claims. See Bostock, No. S1337-03 CnC, slip copy at 18–22 (citing Restatement (Second) of Torts §§ 817, 819 (1979)).

"One who withdraws the naturally necessary lateral support of land in another's possession or support that has been substituted for the naturally necessary support, is subject to liability for a subsidence of the land of the other that was naturally dependent upon the support withdrawn." Restatement (Second) of Torts § 817(1). However, as the

State correctly points out, the Restatement makes clear that the facts of the amended complaint do not fall within the lateral support doctrine:

> This Chapter states the liabilities of a person who withdraws the support furnished by one tract of land to a tract of land in possession of another person insofar as these liabilities arise from an invasion of the interests of the other in the support of his land . . . . *It does not state the liability of a person who, as a trespasser upon a tract of land, removes the support of some part of the land. (The liability for trespass on land is stated in §§ 157- 166.) The damages for that harm are recoverable as part of the damages for the trespassing act.* Interests of a possessor of land other than his interest in the support of his land may be invaded by the acts involved in withdrawing support, but the liabilities for these invasions are not within the scope of this Chapter.

Restatement (Second) of Torts, Ten 39 Scope Note (emphasis added). Plaintiff alleges that the State's trespassory flow of water *onto her land* has caused subsistence by creating a large ravine across her land. This is essentially another attempt to reframe her trespass claim. The allegations of the amended complaint do not give rise to a claim for the withdrawal of lateral support.

## Order

The motion to dismiss is granted as to the takings claim (Count III), ejectment claim (Count IV), and lateral support claim (Count V), but denied as to the nuisance and trespass claims (Counts I and II). The State shall file its answer within 14 days and the parties shall file a discovery schedule within 30 days. The court urges the parties to engage in an early mediation.

Dated at Burlington this 13th day of August, 2019.

_____
Helen M. Toor
Superior Court Judge

15