Filed 04/10/25

VERMONT SUPERIOR COURT
Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-03550

Krisroywick Holding Corp v. North East Response Svcs Llc

## FINDINGS, CONCLUSIONS, AND ORDER

In this case, plaintiff Krisroywick Holding Corporation seeks payment under a Promissory Note issued to defendant North East Response Services LLC. A bench trial was held on January 17, 2025, after which the parties submitted post-hearing memoranda. The court will enter judgment for plaintiff as explained and set forth below.

### Findings of Fact

Plaintiff is a holding company owned by Kristina and Chadwick Roy. In or about 2004, plaintiff, doing business as Cleanway Services, began operating a carpet cleaning business, specializing in fire and flood restoration. Plaintiff eventually grew the company to 17 employees and had an annual revenue of approximately $1.5 million. Operating out of an office St. Johnsbury and eventually another in Littleton, New Hampshire, plaintiff served clients in Vermont, New Hampshire, Massachusetts, and occasionally Connecticut.

In October 2015, plaintiff sold the cleaning business to defendant for $905,000 by means of an Asset Purchase Agreement. Of that total, $360,000 was financed by a Promissory Note. As set forth in both the Note and the Asset Purchase Agreement, interest would accrue on any unpaid amount at the rate of six percent per annum from the date of the Note, which was executed October 29, 2015. No payments of interest or principal would be due during the first two years of the Note, after which the interest accrued during the first two years would be added to the principal and defendant would be responsible for making quarterly interest payments. The Note contained a balloon payment provision, which stated that "The entire outstanding principal balance of this Note together with all outstanding accrued interest shall be due and payable in full, without notice or demand, on October 29, 2021." Pl.'s Exh. 1, at 1.

The Asset Purchase Agreement also included a Purchase Price Reduction Clause, which provided as follows:

> The Asset Purchase Price shall be subject to reduction as follows. If the cumulative gross revenue of the Business from the Closing Date until the sixth anniversary of the Closing Date is less than Nine Million and 00/100 Dollars ($9,000,000.00), then the Asset Purchase Price shall be reduced by the One Hundred Sixty Thousand and no/100 Dollars ($160,000.00) (the **"Purchase Price Reduction"**). If the Purchaser sells substantially all of the assets of the Business prior to the sixth

anniversary of the Closing Date, then the Purchase Price Reduction shall apply if the average annual gross receipts of the Business from the Closing Date to the effective date of such sale are less than One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00). If the Purchase Price Reduction takes effect, it shall be credited against the obligation to pay the principal balance of the Promissory Note, and in addition, all interest previously paid under the Promissory Note on $160,000 of the Asset Purchase Price shall be credited back to the Purchaser to further reduce the amount payable under the Promissory Note and all accrued and unpaid interest on $160,000 of the Asset Purchase Price shall be discharged. For purposes of this provision, the gross revenue of the Business shall include revenue of the Purchaser and all businesses established by the Purchaser to serve the geographic area currently served by the Business, to the extent such revenue is derived from performance of any type of property restoration service currently performed by the Business but excluding revenue from future acquisitions of other existing businesses.

Pl.'s Exh. 2, at § 1.03(b).

The Asset Purchase Agreement also included a non-compete and non-solicitation provision, which generally prohibits plaintiff, for a period of six years, from engaging "in any activity or business venture" that is competitive" with defendant in the geographic area where the business was then operating, or from soliciting any of defendant's clients for property restoration services. Pl.'s Exh. 2, at § 5.02. The provision states that because the "the remedy at law for any breach" of this provision "would be inadequate," the parties agree that a court of competent jurisdiction could grant "specific enforcement, including, but not limited to pre-judgment injunctive relief." *Id.*

The Asset Purchase Agreement indicates that the Note "shall be subordinate to all other debt" of defendant, and that the terms of the Note "shall be subject to acceptance by [defendant's] senior lenders." Pl.'s Exh. 2, at § 1.03(a)(iii). Separately, plaintiff executed a Standby Creditor's Agreement with the United States Small Business Administration on October 29, 2015. That Agreement provides in relevant part:

To induce New England Certified Development Corporation (Lender) to make an SBA guaranteed loan to [defendant] . . . in the amount of $68,000 (Lender's Loan), [plaintiff] agrees [t]o accept interest only payments at the rate of 6.00% per annum (no principal payments) on [the Promissory Note] until Lender's Loan is satisfied or until notified by Lender to stop accepting payments[.]

Def.'s Exh. D, at § 1. Chadwick Roy, who signed the agreement for plaintiff, wrote by hand next to the section quoted above, "See terms of attached Standby Note," *i.e.*, the Promissory Note. *Id.* The Standby Creditor's Agreement also indicates that plaintiff agreed "[t]o take no action to enforce claims against [defendant] on the [Promissory Note] until Lender's Loan is satisfied." *Id.*, § 3. The only signature on the Standby Creditor's Agreement is Mr. Roy's, on behalf of plaintiff.

The parties agree that defendant made no principal payments on the Promissory Note and by October 1, 2021, had made interest payments totaling $50,454. Defendant failed to make the "balloon payment" of all outstanding interest and principal due on October 29, 2021, after which

plaintiff filed this complaint alleging breach of the Promissory Note and seeking damages thereunder.[1]

**Conclusions of Law**

The remaining disputes in this case are fairly narrow. The parties agree on many of the underlying facts including the payments defendant has made under the Promissory Note. Defendant does not dispute that he defaulted on the Note. The parties do, however, dispute whether the Standby Creditor's Agreement precludes this action; whether the Purchase Price Reduction Clause in the Asset Purchase Agreement applies; and, if judgment is awarded to plaintiff, the extent to which plaintiff is entitled to prejudgment interest at the contract rate of 6% per annum or the statutory rate of 12% per annum. Defendant also argues that plaintiff breached the Asset Purchase Agreement's non-compete and non-solicitation provision. The court will address each issue in turn.

### 1. The Standby Creditor's Agreement

The parties agree that defendant has not satisfied its SBA loan to New England Certified Development Corporation and currently owes somewhere between $40,000 and $60,000. According to defendant, this means plaintiff cannot take any action to enforce the Promissory Note and may only accept interest-only payments on the Note. Plaintiff argues that defendant lacks standing to raise the Standby Creditor's Agreement as a defense to this action and that, in any event, Chadwick Roy's handwritten notation on the Standby Creditor Agreement materially changed the terms of the agreement so that they mirror the repayment terms in the Promissory Note, including the balloon payment provision.

Defendant is not a party to the Standby Creditor's Agreement. Accordingly, defendant may only enforce the agreement if it is an intended beneficiary of the agreement. *See Sutton v. Vermont Reg'l Ctr.*, 2019 VT 71A, ¶ 64, 212 Vt. 612 (2020) (citing Restatement (Second) of Contracts § 304). "The fact that a contract would benefit a third party does not mean the third party has a right to enforce it." *Id.* "Many contracts benefit third parties, but those third parties are treated as incidental beneficiaries unless the contract language specifically indicates an intent to benefit them." *Id.* (citing *McMurphy v. State*, 171 Vt. 9 (2000)).

The Standby Creditor's Agreement is a subordination agreement that prioritizes one lender's right to repayment (New England Certified Development Corporation) over a second lender's right to repayment (plaintiff). While both *loans* were made for defendant's benefit, the Standby Creditor's Agreement was plainly for the benefit of New England Certified Development Corporation, which is not a party here and did not testify or otherwise submit any evidence at the bench trial. *See Shawn Ibrahim, Inc. v. Houston-Galveston Area Loc. Dev. Corp.*, 582 S.W.3d 753, 770–71 (Tex. App. 2019) ("subordination agreement is for the sole benefit of senior creditor"

---

[1] Defendant initially filed counterclaims against plaintiff and third-party claims against Kristina and Chadwick Roy, but the court dismissed those claims in April 2024 based on defendant's failure to prosecute and comply with its discovery obligations.

(quotation omitted)). Moreover, although the Asset Purchase Agreement notes the subordinate nature of the Promissory Note, the Standby Creditor's Agreement is not referenced anywhere in the Note or the Asset Purchase Agreement. Nor was any evidence presented that any of defendant's senior lenders—including New England Certified Development Corporation—refused to accept the terms of the Note, as was their right under the Asset Purchase Agreement. Accordingly, the court concludes that defendant does not have a right to enforce the Standby Creditor's Agreement to avoid payment to plaintiff under the Promissory Note in this action. Because the court concludes that defendant may not enforce the agreement, the court does not address the impact of Mr. Roy's handwritten notation on the agreement.

### 2. The Purchase Price Reduction Clause

The parties also dispute whether defendant is entitled to a $160,000 credit under the Purchase Price Reduction Clause in the Asset Purchase Agreement. As noted above, defendant's entitlement to the credit depends on whether its cumulative gross revenue between October 2015 and October 2021 was less than $9 million, including revenue from "all businesses established by" defendant "to serve the geographic area" served by Cleanway at the time of closing and which is "derived from performance of any type of property restoration service" performed by Cleanway at the time of the closing, "but excluding revenue from future acquisitions of other existing businesses." Pl.'s Exh. 2, at § 103(b).

Defendant submitted evidence that its gross revenue during the relevant period was $7,558,286, which is $1,441,714 less than the $9 million target in the Purchase Price Reduction Clause. The court finds this evidence credible and largely uncontroverted.[2]

To the extent plaintiff argues that defendant's gross revenue figures, for purposes of the Purchase Price Reduction Clause, should include revenue from companies that defendant's owner Benjamin Murray subsequently acquired (Advanced Cleaning Concepts and Trahan Cleaning Service), the court disagrees. The evidence shows that these entities were existing businesses that defendant acquired to operate in adjacent but distinct industries, namely commercial janitorial services. The evidence further showed that, although Cleanway employees sometimes did work for these companies, they were generally paid separately by those companies when they did, and the companies otherwise maintained separate books and performed different services. The court concludes that revenue from these businesses should not be considered under the Purchase Price Reduction Clause.

---

[2] Plaintiff suggests that defendant's revenues should have been higher, based on a comparison to plaintiff's revenues when it operated the business before the closing. The evidence at trial, however, showed that defendant may have lost revenue by closing the business's New Hampshire office and that plaintiff may have experienced a revenue boost based on no-restoration work it was performing at Burke Mountain Resort. The court further rejects plaintiff's argument that defendant was required to include in its gross revenue figures amounts for work performed but for which it had not yet paid during the relevant period.

Based on the foregoing, the court concludes that defendant's gross revenue from October 2015 to October 2021 was less than $9 million, and that accordingly, defendant is entitled to a $160,000 credit on the purchase price under the Purchase Price Reduction Clause.

### 3. Prejudgment Interest

Although the Asset Purchase Agreement and Promissory Note set forth an interest rate of 6% per annum, plaintiff argues it is entitled to the statutory interest rate of 12% per annum running from the date the complaint was filed on November 9, 2021.

"Prejudgment interest is granted pursuant to Rule 54(a), which states, '[i]n an action where monetary relief is awarded, the amount of the judgment shall include the principal amount found to be due, *all interest accrued on that amount up to and including the date of entry of judgment*, and all costs allowed to the prevailing party." *Martin v. Lyon*, 2024 VT 68, ¶ 10 (quoting V.R.C.P. 54(a) (emphasis added)).

Section 41a of Title 9 provides that "[e]xcept as specifically provided by law, the rate of interest or the sum allowed for forbearance or use of money shall be 12 percent per annum computed by the actuarial method." 9 V.S.A. § 41a. The Vermont Supreme Court, however, has made clear that this statutory rate only applies "if the contract does not stipulate a rate of interest." *New England P'ship, Inc. v. Rutland City Sch. Dist.*, 173 Vt. 69, 78 (Vt. 2001). Both the Asset Purchase Agreement and Promissory Note here set forth a six percent rate of interest. Although plaintiff makes equitable arguments for applying a higher rate, it cites no legal authority for the court to apply the statutory rate of 12% in these circumstances rather than the 6% rate to which the parties agreed. The court will accordingly apply the contractual rate of 6%.

### 4. The Non-Compete Provision

The evidence presented at trial fails to show that plaintiff violated the non-compete and non-solicitation provisions in the Asset Purchase Agreement. While defendant introduced some evidence that plaintiff, or its principals, may have performed some general renovation work for a former Cleanway client, the court does not find that evidence establishes a breach of the agreement. In any event, the court discerns no basis to use an alleged violation of the non-compete and non-solicitation provision to offset defendant's liability under that Asset Purchase Agreement and Promissory Note. The agreements set forth no offset mechanism or formula, and although defendant initially brought counterclaims based on the breach of the non-compete and non-solicitation provisions, those counterclaims have long since been dismissed.

* * *

Based on the foregoing, the court concludes that defendant owes $224,720 in outstanding principal on the Promissory Note. *See* Pl.'s Exh. 4b. At the time the balloon payment came due on October 29, 2021, defendant owed $3,478.80 in outstanding principal. Since that time, interest has continued to accrue on the outstanding principal at the contractual rate of 6%—or $13,483.20 per year—or $36.94 per day. It has been three years and 163 days since the date of default.

Accordingly, plaintiff is entitled to additional prejudgment interest in the amount of $46,470.82 ($40,449.60 + $6,021.22), which makes the total judgment amount $274,669.62.

The court further concludes that plaintiff is entitled to its costs and reasonable attorney's incurred in this action. *See* Pl.'s Exh. 1 (in the event of default, defendant "agrees to pay all costs and reasonable attorneys' fees incurred in the collection of this Note"). Within 21 days of this order, plaintiff shall submit a request for attorney's fees and costs, which shall be supported by an affidavit from counsel itemizing the fees billed and the costs incurred. Defendant may file a response to plaintiff's fee request 14 days thereafter.

The court will enter judgment, as set forth above, concurrently with this order. *See* V.R.C.P. 58(c) ("Entry of the judgment shall not be delayed, nor the time for appeal extended, for the taxing of costs or the award of attorneys' fees . . . .")

### Order

The court will enter judgment for plaintiff in the amount of $274,669.62 on its claim for breach of the Promissory Note and Asset Purchase Agreement.

Within 21 days of this order, plaintiff shall submit a request for attorney's fees and costs, which shall be supported by an affidavit from counsel itemizing the fees billed and the costs incurred. Defendant may file a response to plaintiff's fee request 14 days thereafter.

Electronically signed on: 4/10/2025 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge

Electronically signed pursuant to V.R.E.F. 9(d)

_____
Merle L. Haskins
Assistant Judge