## Cora V. Overocker v. Walter M. Adams Et Al.

[127 A2d 117]

October Term, 1956.

Present: **Jeffords, C. J., Cleary, Adams, Hulburd and Holden, JJ.**

Opinion Filed November 7, 1956.

*A. Pearley Feen, Paul D. Sheehey* and *Philip W. Hunt* for the plaintiff.

*Edmunds, Austin & Wick* and *John M. Dinse* for defendant Adams.

*Latham & Peisch* for defendant Champlain Realty Co., Inc.

**Cleary, J.** This is an action of tort for alleged negligence resulting in injuries to the plaintiff when she fell into a hole in a public highway. Trial was by jury. At the close of the plaintiff's case the court directed a verdict for the defendant Champlain Realty Co., Inc. At this time and again at the close of all the evidence the court denied defendant Adams' motion for a directed verdict but the jury returned a verdict for him and judgment was for each defendant. The case is here on the plaintiff's exceptions.

The plaintiff claims that the evidence established a breach of the safety ordinance of the City of Burlington which was the proximate cause of the plaintiff's injury, for which both defendants are responsible and that it was reversible error to exclude the ordinance which she offered in evidence. She also claims there was substantial evidence from which the jury could find that her injury was caused by negligence for which the defendant Realty Co. was answerable and from which the jury could find that the plaintiff was free from contributory negligence, and that it was reversible error to direct a verdict for the Realty Co.

Section 2 of the Revised Ordinances of 1953 of the City of Burlington provides as follows:

> "Whenever a street, sidewalk, park, or common shall, under a permit granted as provided in the preceding section, be dug up, obstructed, encumbered or otherwise thereby rendered unsafe or inconvenient for travel, the person so permitted shall put and at all times maintain a suitable railing or fence around such section of the street, sidewalk, park, or common, so long as the same shall be unsafe or inconvenient as aforesaid; and shall also keep one or more lighted lanterns fixed to such fence, or fixed in some other proper manner, every night

from sundown to sunrise, so long as such railing or fence shall be kept standing or obstruction remain."

The ordinance was properly excluded for various reasons. We shall mention two of them. 1. The evidence was uncontradicted that, for at least 25 days prior to the date of the accident, defendant Adams had completed the rebuilding of the curbs at the junction of Birchcliff Parkway and Shelburne Street and had graded the surface of the new street with gravel, including the spot where the accident happened, up to the blacktop on Shelburne Street; that from that time the new street and its approaches were reasonably safe, were open for travel and were being used both for vehicles and by pedestrians including the plaintiff; that the city of Burlington itself was to put on hard surface on the new construction. 2. The plaintiff's complaint consisted of two counts. Only the second count referred to the ordinance. It alleged that the storm made the hole in question on August 25, 1953 and that condition was dangerous and hazardous; that it was the duty of the defendants by virtue of the ordinance, when the street was rendered unsafe for travel to put up and maintain a suitable railing or fence around the unsafe section of the street and also to keep one or more lighted lanterns fixed to the fence or fixed in some other proper manner; that notwithstanding their duties as aforesaid the defendants negligently and carelessly failed to put a railing or fence around the unsafe section of the street or to keep one or more lighted lanterns fixed to such fence or fixed in any other proper manner. So the claim of the plaintiff was that the defendants were negligent by violating the ordinance not at a time when the street was dug up, obstructed, encumbered or otherwise rendered unsafe thereby under the permit but by the storm. The ordinance did not cover the situation alleged in the complaint. So the ordinance was immaterial and irrelevant.

The evidence, viewed in the light most favorable to the plaintiff, showed that the Realty Co. employed defendant Adams to break the curb and gutter on the westerly side of Shelburne Street in Burlington for a new street known as Birchcliff Parkway, and to construct new curbing at the junction of the two streets, and to gravel the surface of the new street.

Adams completed this work prior to July 31, 1953. He continued to do other work on the Realty Co.'s real estate development on Birchcliff Parkway but none of the work was on the section of roadway in question here.

During the afternoon of August 25, 1953 there was an unusually severe storm in the vicinity and it rained very, very hard. The plaintiff's home was at the southwest corner of Shelburne Street and Birchcliff Parkway. At 4:00 P. M. she drove her automobile southerly along Shelburne Street. She noticed the water was flowing on Shelburne Street and there was a lot of water on that road. She saw a lot of water right where she later had trouble. More water was flowing next to the curb on Shelburne Street than anywhere else. It flowed right around the corner, right around the point where, that evening, she sustained her injuries. She did not drive down Birchcliff Parkway because there was water running down the street and the street was washed out. She was "playing safe, so to speak" and left her car at a neighbor's. The storm ended around 4:00 P. M.

Shortly after 5:00 P. M. defendant Adams learned that there were some holes in the approach to Birchcliff Parkway. Adams then telephoned one of his employees and instructed him to take lanterns there and to put them around the holes. The employee did so. He placed five lanterns with red shades and lighted them. They gave a red glow. He placed one lantern at the southeast corner of the catch basin near the intersection of Shelburne Street and Birchcliff Parkway, and one at the southeast corner of a hole which had been washed out right next to the catch basin so that there was a lighted lantern at each end of the hole where the accident later happened. The lanterns were still lighted and in the same positions the next morning.

The plaintiff left her home to go to dinner with friends at 5:45 P. M. At that time she knew red lights had been placed at the corner of Shelburne Street and Birchcliff Parkway. The plaintiff returned to her home at 7:15 P. M. and saw the lights at the street intersection burning at that time. At 9:15 P. M. the plaintiff left her home again to call on neighbors. She walked out onto Shelburne Street and headed north, walked

by several of the red lights on the pavement at the intersection, turned and walked toward the curbing between two of the lights, placed her foot where she could not see where she was going, fell into the hole next to the catch basin and suffered her injuries. She was looking at the curb because that was where she wanted to get onto the sidewalk. She looked but could not see, it was very dark. She did not see the hole and the red lanterns did not light up the area where she fell.

Previous to his death the plaintiff's husband was engaged in road construction business for about thirty years. She helped him and ran some of the road jobs herself. She was familiar with lanterns and things of that sort. She observed the road construction on Birchcliff Parkway, was familiar with its progress and knew whatever had been dug up on Shelburne Street had all been filled in with gravel. She had walked along there most every day and knew how it looked the morning before the accident. She knew there had never been any need for lights there prior to August 25, 1953 and knew there was some condition there that warranted putting out these flares. In her experience she knew that a cloud burst will sometimes wash out holes in gravel and dirt. She knew the red lights, bombs as she called them, "don't give much light but they are protection", that they were put there to warn people, and when she saw the bombs there, they were there to warn her.

 Ordinarily the question of contributory negligence is for the jury, where the law has settled no rule of diligence, but when the material facts are undisputed, and are so conclusive that but one reasonable deduction can be drawn therefrom, the question is one of law for the court. *Miller Chevrolet Co.* v. *Sears*, 118 Vt 302, 304, 108 A2d 529; *Tolin* v. *Hasbrook*, 116 Vt 417, 419, 77 A2d 914, and cases there cited. The plaintiff had the burden of showing freedom from contributory negligence, and consequently of producing evidence sufficient to take the case to the jury. The circumstances and dangers in each particular case are always to be taken into account in determining what is due care or evidence of it. *Miller Chevrolet*

*Co.* v. *Sears,* 118 Vt 302, 305, 108 A2d 529; *Parro* v. *Meagher,* 108 Vt 182, 188, 184 A 885.

It is apparent from the facts we have stated that this accident, as far as the plaintiff is concerned, was due solely to her failure to heed the warning of danger which was given her by the lighted red lanterns. In spite of this warning she walked ahead between the two red lanterns at either end of the washed out hole, and, though it was so dark she could not see, placed her foot where she could not see where she was going and fell into the hole.

■ Where, as here, the only evidence indicates such a lack of due care that it must be concluded that the plaintiff's negligence was a proximate cause of the accident, it is contributory in a legal sense and bars recovery. *Tolin* v. *Hasbrook,* 116 Vt 417, 420, 77 A2d 914.

Therefore it follows that the entry of judgment on the directed verdict for the defendant Realty Co. and on the jury's verdict for the defendant Adams were without error.

*Judgments affirmed.*