NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 103

No. 2014-390

| | |
|---|---|
| Kathleen Vanderbloom | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| State of Vermont, Agency of Transportation | March Term, 2015 |

Helen M. Toor, J.

Heidi Groff of Biggam, Fox & Skinner, Montpelier, for Plaintiff-Appellant.

William H. Sorrell, Attorney General, and Toni Hamburg Clithero and William H. Rice, Assistant Attorneys General, Montpelier, for Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.     **ROBINSON, J.**     Plaintiff-appellant Kathleen Vanderbloom filed an action against the State of Vermont, alleging that it negligently designed and constructed a state highway, causing her to suffer injuries in a car crash. The superior court granted summary judgment to the State on sovereign-immunity grounds. We affirm.

¶ 2.     On an afternoon in February 2009, two cars collided on State Route 63 in the Town of Berlin. The westbound car crossed the center line and crashed into plaintiff's car, which was heading east. The driver of the westbound car was killed. Plaintiff suffered serious, disabling physical injuries.

¶ 3.     In February 2012, plaintiff filed a negligence suit against the State. In her August 2012 amended complaint, plaintiff asserted that the State, through its employees, had a duty to

exercise reasonable care in the design, construction, and maintenance of highways, including Route 63, and that the State had breached this duty by creating an unreasonably dangerous roadway.[1]  Plaintiff specifically alleged that the State[2] had designed and constructed the shoulder of Route 63 so that it drained water from melting snow and ice onto the traveled portion of the road, where it could refreeze (a condition called "freezeback").  This condition, plaintiff alleges, caused the other driver to lose control of her car and collide with plaintiff.

¶ 4.    Plaintiff argued that the State waived its sovereign immunity with respect to this action under the Vermont Tort Claims Act (VTCA), 12 V.S.A. §§ 5601-5606.  In September 2014, following discovery, the superior court granted the State's motion for summary judgment, concluding that plaintiff's claim is barred by 12 V.S.A. § 5601(e)(8), which preserves the State's sovereign immunity against "[a]ny claim arising from the selection of or purposeful deviation from a particular set of standards for the planning and design of highways."  The court thus concluded that the State was entitled to judgment as a matter of law.  Plaintiff appeals.

¶ 5.    Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).  We review a grant of summary judgment de novo, under the same standard as the superior court, considering the facts presented in the light most favorable to the nonmoving party.  Madkour v. Zoltak, 2007 VT 14, ¶ 12, 181 Vt. 347, 924 A.2d 11.

¶ 6.    "Under the doctrine of sovereign immunity, claims against the State are barred unless immunity is expressly waived by statute."  Kane v. Lamothe, 2007 VT 91, ¶ 6, 182 Vt. 241, 936 A.2d 1303 (quotation omitted); see also Searles v. Agency of Transp., 171 Vt. 562, 563,

---

[1]  On June 12, 2014, the superior court granted the parties' stipulated motion to dismiss plaintiff's negligent-maintenance claim, leaving at issue only the negligent-design and negligent-construction claims.

[2]  The highway was designed by the Vermont Department of Highways, the predecessor of the Agency of Transportation (AOT).  The AOT, also called "Vtrans," was created in 1975. See 1975, No. 120, § 1.  We use "the AOT" throughout this opinion.

2

62 A.2d 812, 813 (2000) (mem.). The VTCA generally waives the State's sovereign immunity for "injury to persons . . . or loss of life caused by the negligent or wrongful act or omission" of state employees "acting within the scope of employment," and allows suits against the State "in the same manner and to the same extent that a private person would be liable to the claimant." 12 V.S.A. § 5601(a). The VTCA, however, also carves out eight statutory exceptions to this general waiver of immunity. One of these is § 5601(e)(8), which preserves the State's sovereign immunity against "[a]ny claim arising from the selection of or purposeful deviation from a particular set of standards for the planning and design of highways." We have held that this exception does not preserve the State's sovereign immunity in cases in which the State intends to follow particular design standards but then negligently fails to design to those chosen standards. See McMurphy v. State, 171 Vt. 9, 12, 757 A.2d 1043, 1046 (2000) ("Whereas [12 V.S.A. § 5601](e)(8) shelters the State from liability for all of its deliberate design decisions, allowing it to design highways in the manner that it sees fit, the statute preserves liability in circumstances where the State has unintentionally failed to comply with the chosen design standards.").

¶ 7.    In seeking reversal of summary judgment, plaintiff argues that a genuine dispute of material fact exists with respect to: (1) whether the State adopted a "set of standards for the planning and design of highways" with respect to Route 63, and, if so, whether that set of standards was the 1964 Vermont Roadway Design Manual or the 1954 American Association of State Highway Officials' Policy on Geometric Design of Rural Highways (AASHO Policy);[3] and, if the AASHO Policy was selected, (2) whether the highway design conformed to the applicable standard; and (3) whether the State purposefully deviated from that standard. At core, plaintiff's claim is that the State intended to adopt the AASHO standards, and that, with respect to the specific design feature at issue, it failed to comply with the AASHO standard.

_____

[3] The American Association of State Highway Officials (AASHO) subsequently became the American Association of State Highway and Transportation Officials (AASHTO).

3

¶ 8. In order to avoid summary judgment, plaintiff must establish that "the State intended to comply with certain standards, but failed to do so." Id.; see also Mellin v. Flood Brook Union Sch. Dist., 173 Vt. 202, 219, 790 A.2d 408, 423 (2001) ("Plaintiff also must establish that no exception to the State's waiver of its immunity applies to her claim.").

¶ 9. The following is undisputed in the record, unless otherwise noted. The AOT designed Route 63 in 1965, and built the highway in 1970. At the time, AOT used its own design manual, the Vermont Roadway Design Manual (the Manual), dated January 1, 1964. The Manual was developed from contributions "by practically every member" of the AOT's Design Sub-Division. The Manual's introduction states that "[t]he desire of the authors has been to compile a ready reference of the many more or less standard practices and procedures peculiar to the Vermont Department of Highways."

¶ 10. The Manual repeatedly references the AASHO Policy. The opening acknowledgment in the manual references "the adaptation of material from publications of the [AASHO] and the United States Bureau of Public Roads." The Manual instructs that "[t]he design engineer should be constantly aware of these Federal Standards. Reference will be made to various Policy and Procedure Memoranda published by the U.S. Department of Commerce, Bureau of Public Roads, and A Policy on Geometric Design of Rural Highways by the American Association of State Highway Officials (AASHO), etc." The Manual states that it "is imperative that [AOT] personnel . . . become familiar with standard procedures," which "in general conform to the standards listed in the [AASHO] and Bureau of Public Roads literature as well as those summarized in this manual." The Manual includes the AASHO Policy as one of a number of "texts or sources of information" with which AOT staff should "become familiar."

¶ 11. The distinction between the standards set forth in AASHO and those laid out in the Manual is significant with respect to the design features at issue in this case. The parties' experts have offered contrary opinions on the question of whether the State's design of the

4

shoulder of the highway in question complies with the AASHO standard in effect at the time. That standard provides that "[n]ormally shoulders are sloped to drain away from the traveled way," and calls for shoulders to be "pitched sufficiently to remove surface water from the pavement areas, but not to the extent that vehicular use would be hazardous." The standard provides specific guidance as to the appropriate shoulder slope rates, and discusses adjustments from those prescribed rates to account for the slope of the adjoining roadway, including banked curves.

¶ 12. The Manual, on the other hand, specifically provides for continuity of slope from the pavement to the shoulder on the high side of a banked curve. Both the State's and the plaintiff's experts agree that the roadway in question was designed in conformity with the instructions in the Manual. In order to survive summary judgment, then, plaintiff must produce some evidence from which a factfinder can infer that the State did not intend to follow the Manual as a design standard; that it intended to follow the AASHO standards where the two conflicted; that its design did not comply with the AASHO standard concerning shoulder slope on a superelevated roadway; and that its departure from the AASHO standard was not purposeful.

¶ 13. Plaintiff relies on her expert's testimony as to these various issues. Plaintiff's expert does not offer any independent evidence of the State's intent in designing the roadway, but instead interprets the Manual in supporting his conclusion that the State did not intend to follow the Manual as a design standard but instead intended to comply with AASHO. Plaintiff and her expert rely on the repeated references to the AASHO standards within the Manual to support the conclusion that the State intended to design the shoulder on the highway in question to the AASHO standard, rather than the standard specifically laid out in the Manual, with which the State's design complied. Plaintiff also argues that the design standards in the Manual were not really "standards" at all.

5

¶ 14. We conclude that there is no genuine issue of material fact in this record as to the AOT's intent in designing Route 63. The AOT's expert testified that the state-specific design standards in place during the design of the roadway in question were reflected in the Manual. The Manual itself was entitled "The Vermont Department of Highways' Roadway Design Manual," and it indicates on its face that it was intended to compile "the many more or less standard practices and procedures peculiar to the Vermont Department of Highways."

¶ 15. Against this evidence, the fact that the Manual itself repeatedly references the AASHO standard does not support the inference that where the Manual and AASHO conflicted (if in fact they could conflict), the State intended for AASHO to trump the Manual. The references to AASHO all acknowledge that AASHO was an important source for the AOT in compiling its own manual, and that State designers should be well-versed in various general standards, including those embodied in AASHO. But nothing in the Manual requires that the AASHO standards be followed in every instance, suggests that AASHO trumps state-specific standards in the Manual, or incorporates the specific AASHO standard concerning shoulder slopes on a superelevated roadway. For these reasons, plaintiff's expert's affidavit, which avers that the AOT "adopted [1954] AASHO design standards for the 1970 construction" of Route 63, did not raise a genuine issue of material fact. Plaintiff's expert's statement that the AOT adopted the AASHO Policy is a bare conclusion that is unsupported by the record evidence on which the conclusion relies.[4]

¶ 16. For the same reason, the State's "admission" that it used the AASHO standards as guidance in developing its own state design standards does not advance plaintiff's case. Plaintiff

_____

[4] In addition to relying on the various statements about AASHO in the manual, plaintiff's expert states that "[the AOT's] 1997 Vermont State Design Standards refer to AASHTO's 1990 'Policy on Geometric Design of Highways and Streets' for design criteria not contained in the State Design Standards." Even if we assume that the 1997 AOT document does incorporate the 1990 AASHTO Policy, it would have no bearing on our decision here, since both of those documents postdate the design and construction of Route 63.

claims that "the State admitted in discovery that it tried to conform its design of [Route 63] to [the] AASHO [Policy]." In support of its claim, plaintiff points to the State's responses to interrogatories. In those responses, however, the State merely stated that "it utilized the [AASHO] Policy as guidance in developing its own state design standards and project-specific details." The question is not whether the State considered AASHO in developing its standards; it is whether the State adopted AASHO as a set of standards that trumps the state-specific standards in the event of a conflict. The State's reliance on AASHO for guidance in developing its own state-specific standards simply does not support the contention that the State adopted AASHO in preference to those state-specific standards.

¶ 17. Plaintiff's expert also opines that in adopting its design standards, the AOT had to have intended to follow AASHO, as there was no reason to deviate from the AASHO standards concerning the treatment of the shoulder slope on the high side of a superelevated roadway. The thrust of this argument is that the State was negligent in adopting its standard concerning shoulder slopes on banked curves because the State really intended to follow AASHO and its adopted standard failed to do so. Plaintiff's argument cannot evade the limitation in 12 V.S.A. § 5601(e)(8), which preserves the State's sovereign immunity against "[a]ny claim arising from the selection of or purposeful deviation from a particular set of standards for the planning and design of highways." A claim that the State was negligent in developing or selecting its standard, and that it really should have adopted a different standard, falls squarely within this exception to the State's waiver of sovereign immunity.

¶ 18. Nor do we accept plaintiff's assertion that the Manual's introduction, which states that the Manual "should not be construed as a formal document or legal set of specifications," undermines the conclusion that the Manual reflects the State's chosen standards. The State has presented direct evidence in the form of its own expert's testimony that the Manual embodied the State's standards. Even if plaintiff's evidence created a genuine issue as to whether the Manual

7

reflects the standards the State intended to follow—and we conclude that it does not create such an issue—plaintiff has not proffered any evidence that the State, in the alternative, adopted AASHO. The primary evidence relied upon by plaintiff in arguing that the State actually adopted AASHO rather than its own Manual are statements in the Manual itself—statements that indicate only that AASHO was an important resource that informed the State's development of its own standards.

¶ 19. Even viewing the undisputed record evidence in the light most favorable to the plaintiff, we conclude that plaintiff has not proffered any evidence that could reasonably permit a jury to infer that the AOT intended to incorporate an AASHO or other design standard for the shoulder that is different from standard in the Manual.[5] As a result, we conclude that 12 V.S.A. § 5601(e)(8) preserves the State's sovereign immunity against this claim, and affirm the trial court's award of summary judgment to the State.[6]

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[5] Because we conclude on the basis of the undisputed facts in the record that the standards in the Manual apply, and because plaintiff's expert conceded that the State's design in this case complied with the Manual, we need not consider whether the State "purposefully deviated" from a chosen standard.

[6] Because we affirm the judgment on § 5601(e)(8) grounds, we need not address the State's alternative argument based on the discretionary-function exception to the VTCA. See 12 V.S.A. § 5601(e)(1) (preserving sovereign immunity against claims "based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a State agency or an employee of the State").

8