VERMONT SUPERIOR COURT
Addison Unit
7 Mahady Court
Middlebury VT  05753
802-388-7741
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 23-CV-05216



| Alexandra Cushing, et al v. Casella Construction, Inc.,  et al |
|---|

## ENTRY REGARDING MOTION

Title:        Motion for Summary Judgment (Motion: 6)
Filer:        Joseph M. Fiorello
Filed Date:    September 26, 2025

This case follows a fatal road accident that occurred in Leicester, Vermont, on March 15, 2022.  Plaintiffs Alexandra Cushing, Stephen Cushing, and Maiia Polischuk are the relatives of decedent Lyudmila Cushing.  They allege that Defendants Norman Arnold and Casella Construction, Inc. operated an overloaded truck above the speed limit and crashed its front end into the vehicle operated by Ms. Cushing, causing her pain and suffering, and death.

To that end, Plaintiffs bring three claims: (1) negligence against Defendant Casella Construction Inc., based upon a theory of vicarious liability for the negligence of its driver Norman Arnold, along with a direct negligence claim against Casella for negligent hiring, training, entrustment, supervision, and retention of Mr. Arnold, (2) negligence against Defendant Norman Arnold, and (3) a survival action on behalf of the estate of Lyudmila Cushing for pain and suffering, and emotional distress.

Before the court now is Defendants' motion for summary judgment on all counts. Plaintiffs oppose the motion.  For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

### I.  Relevant Background

Plaintiffs brought their complaint on December 14, 2023.  Defendants answered on January 18, 2024.  The most recent discovery schedule provides that all written discovery be sent to the opposite party no later than November 1, 2025, witness depositions other than expert witnesses be scheduled and taken no later than February 1, 2026, dispositive motions, including summary judgment motions, be filed by January 2, 2026, and that discovery be complete and the case ready for trial by April 1, 2026. See Discovery Deadline Stipulation (filed Aug. 29, 2025); Action Order (filed Sep. 3, 2025) (adopting Discovery Deadline Stipulation).

Defendants filed the summary judgment motion on September 26, 2025.  They move for judgment on all counts of the complaint, and their principal argument is that Plaintiffs cannot establish that Ms. Cushing's own negligence was not the proximate cause of the accident, her

subsequent injuries, and death.  They posit that to resolve their motion, the court need only view the video of the accident, MSJ Ex. E., which captured the collision in real-time and so represents an objective reconstruction of the accident, and determine that no reasonable juror could, after watching that video, determine that Ms. Cushing "was less than 51% at fault." Defendants' Reply Brief (filed Nov. 17, 2025) at 2 (emphasis deleted).  If the court so determines, Defendants continue, this would operate to preclude Plaintiffs from recovering as a matter of law.  Defendants assert, in the alternative, that Plaintiffs' claims of Casella's direct negligence fail for lack of evidence of any negligent action or inaction.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." V.R.C.P. 56(a).  A fact is material only if it might affect the outcome of the case. *O'Brien v. Synnott*, 2013 VT 33, ¶ 9, 193 Vt. 546.  In assessing whether a genuine dispute as to any material fact exists, courts construe "the facts presented in the light most favorable to the nonmoving party," *Vanderbloom v. State, Agency of Transp.*, 2015 VT 103, ¶ 5, 200 Vt. 150, such that "the nonmoving party receives the benefit of all reasonable doubts and inferences," *Pettersen v. Monaghan Safar Ducham PLLC*, 2021 VT 16, ¶ 9, 214 Vt. 269.  To that end, courts "accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Robertson v. Mylan Laboratories, Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356.

"Where the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case." *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 18 (1995).  "The nonmoving party may survive the motion if it responds with specific facts raising a triable issue." *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180 (1995).

## III. Facts

Viewing the evidence in the light most favorable to Plaintiffs, the following narrative emerges.

Norman Arnold has worked as a truck driver for Casella Construction Inc. since 2013.  By the March 2022 accident, Mr. Arnold had had decades of experience operating commercial vehicles.  He had never been involved in an accident while driving a commercial vehicle prior to being hired by Casella.  Prior to March 15, 2022, Mr. Arnold had, indeed, never been involved in a car accident while driving for Casella.

On March 15, 2022, at approximately 3:22 p.m., Mr. Arnold was operating a Casella tractor-trailer on U.S. Route 7 in Leicester, Vermont.  Route 7 is a two-lane roadway that passes

through the Town of Leicester, Vermont. Leicester Whiting Road is a two-lane roadway that intersects Route 7 in Leicester. At the junction where the two roads meet, the posted speed limit is 50 mph. There is no traffic control signal or a STOP sign regulating traffic on Route 7 at the intersection with Leicester Whiting Road. But traffic heading eastbound on Leicester Whiting Road toward the intersection with Route 7 is controlled by a STOP sign. Leicester Whiting Road traffic stopped at the STOP sign must therefore yield to traffic on Route 7.

As Mr. Arnold was traveling southbound on Route 7 in the Casella tractor-trailer toward the subject intersection, Ms. Cushing was driving her 2013 Honda CR-V east on Leicester Whiting Road toward that same intersection. At approximately 3:22 p.m., the two vehicles collided. The collision was captured on a surveillance video of Mr. Jared Reed, whose residence is located on Route 7, just southeast of the subject intersection—the camera was placed on a residence at 2302 Fern Lake Road in Leicester, Vermont, and pointed toward the intersection of Route 7 and Leicester Whiting Road. See Ex. F, ¶¶ 7, 9, 14–16. Defendants offer that video to the court, MSJ Ex. E, and assert that it must rule for them, on the basis of that video, as a matter of law. Mr. James Ploof was moreover a direct witness to the collision; his pickup truck can be readily observed on the video, see MSJ Ex. E at 0:16, and he can be later seen running toward the vehicles after they had collided, *id.*, at 0:22; Ex. H. His recollection of the events coincides with what the video depicts. See Ex. H.

The relevant portion of the video is short, at just 10 seconds. At approximately 0:08, Ms. Cushing's car enters the frame; she can be seen entering the frame on Leicester Whiting Road, approaching the intersection with Route 7 in Leicester. And although a STOP sign controls the intersection of Leicester Whiting Road and Route 7, Ms. Cushing's vehicle never comes to a complete stop before pulling onto Route 7. See MSJ Ex. E at 0:10–0:15. Ms. Cushing's vehicle can be observed slowing down, which could be potentially consistent with Plaintiffs' assertion that there was a sight obstruction at the intersection of the two roads. See *id.*, at 0:14–0:15; see also e.g., Pl's.' Resp. SUMF, ¶¶ 11–12, 14–17, 20, 23, 25–28 (insisting that "Ms. Cushing's view at the stop sign was obstructed"). Still, Ms. Cushing's vehicle never comes to a complete stop. Her Honda then pulls onto Route 7, attempting a left-hand turn, without yielding Mr. Arnold's vehicle the right of way. See *id.*, at 0:15–0:17. At 0:17, the vehicles collide. The force of the impact pushes the vehicles out of the frame, and both presumably come to a complete rest shortly after. See *id.*, at 0:23 *et seq*.

Plaintiffs allege that Defendants' truck was driving 58 mph, above the posted 50-mph speed limit on Route 7, shortly before the collision. They also allege Defendants' truck was overloaded or overweight at the time of the collision. Defendants counter they had a valid excess weight permit and, in any event, their vehicle was rated for a weight over what it was hauling at the time of the collision. While these assertions could be notionally deemed to create a triable issue at this stage, neither is material to the court's decision. Indeed, Defendants'

motion is based on insufficient causation. See *Driscoll v. Wright Cut & Clean, LLC*, 2024 VT 49, ¶ 8, 219 Vt. 623 ("The absence of causation alone, even if we assume there was a breach of duty, warrants judgment in favor of defendants."). It is therefore immaterial whether Defendants breached a duty or were prima facie negligent. See *Bacon v. Lascelles*, 165 Vt. 214, 222–23 (1996) ("[P]roof of the violation of a safety statute creates a prima facie case of negligence. A prima facie case raises a rebuttable presumption of negligence and shifts the burden of production to the party against whom the presumption operates. When that party produces 'evidence … fairly and reasonably tending to show that the real fact [is] not as presumed,' the presumption disappears." (citations omitted and alteration in original)). Whether a presumption of negligence operates against Defendants for speeding or driving an overloaded truck, a negligence claim still "requires injury and causation, and neither of these elements is established by proof of a violation of a safety statute, even if the defendant presents no evidence supporting the reasonableness of its actions. *Ziniti v. New England Cent. R.R., Inc.*, 2019 VT 9, ¶ 34, 209 Vt. 433 (citation omitted).

## IV. Analysis

To survive a negligence claim motion for summary judgment, the plaintiff must produce sufficient evidence of (1) "a legal duty owed by defendant to plaintiff," (2) "a breach of that duty," (3) "an actual injury to the plaintiff," and (4) "a causal link between the breach and the injury." *Zukatis v. Perry*, 165 Vt. 298, 301 (1996) (citation omitted). And while duty is generally a question of law, breach and causation are questions of fact. See e.g., *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 317 n 2 (2001) (duty); *Leclair v. Boudreau*, 101 Vt. 270, 274 (1928) (breach); *Wells v. Village of Orleans, Inc.*, 132 Vt. 216, 22 (1974) (causation). The absence of causation alone, even if the court assumes a breach, warrants judgment in favor of the defendant. See *Driscoll*, 2024 VT 49, ¶ 8.

The causation element of negligence first requires sufficient evidence for a reasonable jury to conclude that, "but for" some negligent action by the defendant, the plaintiff would not have been harmed. *Collins v. Thomas*, 2007 VT 92, ¶ 8, 182 Vt. 250. A negligence plaintiff must, however, also show proximate causation. *Id*. Contrasted with "but for" causation, proximate causation requires a showing "'that the defendant's negligence was legally sufficient to result in liability' in that the injurious consequences flowed from the defendant's conduct and were not interrupted by some intervening cause." *Ziniti*, 2019 VT 9, ¶ 15. In other words, the plaintiff must show that the defendant's negligence was "legally sufficient to result in liability … such that liability attaches for all the injurious consequences that flow [from the defendant's negligence] until diverted by the intervention of some efficient cause that makes the injury its own." *Collins*, 2007 VT 92, ¶ 8 (citations and internal quotations omitted, and alteration in original). "There may be more than one proximate cause concurring to produce an injury." *Choiniere v. Sulikowski*, 126 Vt. 274, 278 (1967).

### a. Proximate causation: generally a jury question

Proximate cause is generally a jury question "unless the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way." *Roberts v. State*, 147 Vt. 160, 163 (1986) (citation omitted). Indeed, "[w]hen the evidence is such that there is doubt about whether one of two causes is a proximate cause of an injury so that the question could reasonably be found either one way or the other, the question is one of fact for the court or jury." *Nyman v. Cedar City*, 361 P.2d 1114, 1117 (Utah 1961) (cited in *Roberts*, 147 Vt. at 163). This is true even in the case of a violation of a safety statute. See *Lee v. Wheeler*, 130 Vt. 624, 627 (1972).

Defendants here argue that Ms. Cushing's own negligence was the proximate cause of her injuries. In Vermont, "[c]ontributory negligence does not bar, nor under 12 V.S.A. § 1036, reduce recovery, unless it is the proximate cause, or a part thereof, of the accident." *Lee*, 130 Vt. at 626; see also 12 V.S.A. § 1036(a) ("Contributory negligence shall not bar recovery in an action by any plaintiff, or the plaintiff's legal representative, to recover damages for negligence resulting in death, personal injury, or property damage, if the negligence was not greater than the causal total negligence of the defendant or defendants."). "Where there is more than one cause concurring to produce the injury, and one such cause is charged against the plaintiff, the burden of proof on that issue is on the defendant." *Id.*, at 626–27. Where, however, the evidence indicates "such a lack of due care that it must be concluded that the plaintiff's negligence was a proximate cause of the accident, it is contributory in a legal sense and bars recovery." *Overocker v. Adams*, 119 Vt. 404, 409 (1956) (citing *Tolin v. Hasbrook*, 116 Vt. 417, 420 (1951).

### b. Court can decide MSJ based on a video

By Defendants, Ms. Cushing's own negligence—perhaps including but not being limited to not coming to a full stop at a STOP sign on Leicester Whiting Road, not observing whether it was safe to turn onto Route 7, and not yielding the right of way to Mr. Arnold's vehicle, see 23 V.S.A § 1048—is captured on video. They contend that the court must decide summary judgment based on the video recording, and determine that Ms. Cushing's own negligence was at least 51% cause of her injuries. See 12 V.S.A. § 1036.

To be sure, Defendants are entirely correct that when objective video evidence is available to a court entertaining a motion for summary judgment, it may consider the visual depictions contained in that video in determining whether a party is entitled to a judgment as a matter of law. *Scott v. Harris*, 550 U.S. 372, 378–381 (2007). In *Scott v. Harris*, for instance, the U.S. Supreme Court considered a video recorded from inside a police car and allowed that recording to resolve the parties' conflicting factual accounts. *Id.*, at 380. The Court refused to accept the plaintiff's version of the events as directly contradicted by the video. *Id.* To that end,

it held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* And so, although the court views the summary judgment evidence in the light most favorable to the nonmoving party, when there is reliable objective evidence—such as a video recording like the one here—that evidence may speak for itself. See e.g., *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012) (rejecting plaintiffs' "characteriz[ation of] their behavior toward the [arresting] officers as cordial" because "audio recording show[ed] indisputably that they were neither courteous nor complaint"); *Cornelius v. Luna*, 2025 WL 2753713, at *3 (2d Cir. Sept. 29, 2025) (recognizing "there are cases where the video evidence is so conclusive that summary judgment is warranted, even in the face of other contradictory evidence and testimony offered by a party"); and c.f. *Moore v. Bitca*, 2020 WL 5821378, at *12 (D. Vt. Sept. 30, 2020) (observing that facts reflected in audio and video recordings can be the best evidence of what transpired, and competing inferences drawn from those recorded events do not render the events themselves disputed).

*c. Court here, however, cannot decide proximate causation on MSJ: distinguishing Pratt*

The rest of Defendants' argument then mirrors chiefly the reasoning of the Vermont District Court in *Pratt v. Nat'l R.R. Passenger Corp.*, 197 F. Supp. 3d 645 (D. Vt. 2016). They assert *Pratt* is indistinguishable from this case, both as a matter of facts and legal analysis, and requires this court to reach the same conclusion here.

In *Pratt*, a young man was struck by a train and killed while crossing the tracks. The young man's estate brought a negligence action against the railroad, the owner of the tracks, the train's conductor, and its engineer. The defendants moved for summary judgment on all claims. In support of their motion, the defendants submitted a video recording taken from a camera mounted on the front of the train. The video provided "clear objective evidence of the events leading up to [the young man's] death." *Pratt*, 197 F. Supp. 3d at 650.

Based on the video, the *Pratt* defendants contended that the young man's own negligence was the proximate cause of his death. More specifically, they argued that the video showed "the train blew its horn immediately before the accident, that the horn was in working order, that the sight distances were clear, and that the train was operating within the speed limit." *Pratt*, 197 F. Supp. 3d at 652. The plaintiff countered that the defendants negligently failed to blow the horn and apply the emergency brake in a reasonable manner. *Id*.

The *Pratt* court largely agreed with the defendants' arguments on the horn pattern, the blowing of the horn, the train speed, and track maintenance. See *id*., 651–54. But the most

relevant to this case Defendants' argument is the *Pratt* court's analysis in part 4 of the opinion—Application of the Brake. See *id.*, 654–56.

The *Pratt* plaintiff submitted that the train's engineer should have applied the emergency brake several seconds prior to impact. It offered a detailed expert opinion substantiating its position. The defendant submitted a countervailing expert opinion, which concluded that the engineer could not have been alerted to a danger until the young man, Eric, was, at most, two or three steps away from the tracks—at which time it would have been too late to avoid a collision.

As Defendants correctly point out, the *Pratt* court concluded that "[b]ased upon the video evidence, the Court finds that it would be unreasonable to expect the engineer to apply the emergency brake when Eric first appeared in view." *Id.*, 655. The court ultimately granted the defendants' motion. The court, however, also did so based on fairly sophisticated and conclusive calculations offered by the parties' experts:

> The train data recording indicates that as a result of two seconds of braking, the train's speed reduced just one mile per hour. Three seconds of braking resulted in a speed reduction of two miles per hour—from 50 miles per hour to 48 miles per hour. As discussed more fully below, these decreases in speed would not have been sufficient to save Eric's [the young man's] life.
>
> Indeed, even if the jury were to accept Plaintiffs' view of the facts and find that the engineer should have reacted 6.5 seconds prior to impact, reasonable jurors could not conclude that the failure to act was a proximate cause of the accident. Plaintiff's expert Scott opines that if the engineer had moved to activate the brake when he first saw Eric, and factoring in human reaction time, the train would have had 5 seconds to slow. Assuming such slowing, Plaintiff contends that the train would have been 6 feet shy of Eric's position as he crossed the tracks, and that this difference would have saved his life.
>
> The train data recorder makes clear that with a train traveling 50 miles per hour, application of the emergency brake does not bring about an immediate stop, but instead activates a gradual slowing. Foster Peterson calculated that as a consequence of the train first slowing to 49 miles per hour and then to 48 miles per hour, it would have reached Eric .085 seconds later than it actually did. Peterson further submits, based upon the video, that Eric was

crossing the tracks at an apparent rate of 2.5 miles per hour, or 3.67 feet per second. Plaintiff has not disputed these latter calculations. Assuming a train speed of 48 miles per hour, Eric would have moved approximately three inches further in .085 seconds. The issue for the jury would be whether those few additional inches would have made a difference. Plaintiff argues that Eric was in the process of diving out of the way, but offers only a glimpse of Eric's position on the video in support. Defendants' expert submits that Eric would have needed a full extra second to escape harm, and that in order to afford that much time, the train engineer would have needed to apply the brake seven seconds before impact. Seven seconds would have required application of the brake before Eric came into view of the train—clearly an unreasonable expectation.

The question presented at summary judgment is whether, viewing the facts in a light most favorable to the Plaintiff, a reasonable juror could conclude that Defendants are liable for Eric's death. Even accepting each of the facts put forth by the Plaintiff in terms of what the engineer should have seen, and what he should have done in the seconds prior impact, it is plain that Plaintiff's desired reaction by the engineer would have resulted in the train reaching Eric only hundredths of a second later than it did. Given that calculation, no reasonable juror could conclude that the engineer's alleged negligence in failing to activate the brake prior to impact was a proximate cause of Eric's death.

The Court acknowledges that "[o]rdinarily, proximate cause is a jury issue unless the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way." Here, the facts are sufficiently clear that the engineer could not have reasonably responded in a manner that would have saved Eric's life. Defendants are therefore entitled to summary judgment on Plaintiff's claim.

*Id.*, 655–56 (citations and footnotes omitted, and emphasis added). Because the court was supplied with expert opinions, accompanying the objective video of the accident, sufficient to resolve any purportedly disputed facts, it concluded that "no reasonable juror could conclude that the engineer's alleged negligence in failing to activate the brake prior to impact was a proximate

cause of Eric's death." *Id.*, 656. On no reading of the relevant above-reproduced passage, however, is this court convinced that the *Pratt* court would have taken the proximate causation question from the jury without the extensive calculations based on the expert opinions—on the basis of the video alone. *Id.* ("The Court acknowledges that '[o]rdinarily, proximate cause is a jury issue unless the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way.' *Kuligoski v. Brattleboro Retreat*, 2016 VT 54, ¶ 19."); see also *Pratt v. Nat'l R.R. Passenger Corp.*, 709 F. App'x 33, 34 (2d Cir. 2017) (affirming *Pratt* trial court, making it clear that trial court ruled on the basis of the video and other objective evidence, and noting, *inter alia*, that (1) "[t]he district court correctly ruled that under *Scott v. Harris*, … the objective video *and data evidence* furnished by the Defendants on summary judgment was sufficient to overcome all contrary eyewitness testimony and preclude any genuine dispute of material fact as to the train's speed and horn blasts," (2) that there were no "irregularities or inconsistencies in the video *and data evidence* sufficient to give rise to a genuine issue of material fact," (3) that the "minor discrepancies in the formatting of the *data reports* were explained" away Amtrak's expert witness, and (4) that trial court was correct in determining that both the video *and data reports* show the horn continuing to sound during the collision and stopping within the second after the collision, "a fact established consistently by both video *and data* reports") (emphasis added), cert. denied 583 U.S. 1093 (2018).

Further, there was no claim that the train in *Pratt* was traveling above the speed limit or was overweight at the time of the accident,[1] violations of safety statutes and independent bases for liability.

Here, as opposed to *Pratt*, the court does not have at its disposal similar sophisticated calculations at all. Plaintiffs' expert simply offers the opinion that based on his calculations, had Mr. Arnold driven the speed limit, the collision would either "not have occurred, as the Toyota would have continued in its left turn beyond where the area of impact in the crash, or would have occurred into the rear of the vehicle and not the driver['s]s door." Pl's.' Ex. 1, ¶ 13. Plaintiffs' experts' opinion does raise a genuine issue of fact—it does not, as opposed to the plaintiffs' experts in *Pratt*, allow the court to unequivocally, based on the summary judgment record, which includes the video of the accident, conclude that no reasonable juror could find that Ms. Cushing's own negligence was the sole or majority proximate cause of her own injuries. Indeed, accepting either of Plaintiffs' expert's two scenarios, a reasonable juror could conclude that had Mr. Arnold driven the speed limit, the accident would have been less severe or avoided altogether. A jury could reasonably conclude that had Mr. Arnold driven at or below the speed limit, even if Ms. Cushing still, as a result of her own negligence, wrongly pulled onto Route 7, the collision would have either been completely avoided, in which case Ms. Cushing's own negligence would have been reasonably expected to have been responsible for nothing (thus

---

[1] "It is thus undisputed that train was traveling within the posted speed limit." *Pratt*, at 654.

raising the possibility that Ms. Cushing's own negligence was perhaps not the legal cause of her injuries), or the collision would have been less severe, though still perhaps at least 51% Ms. Cushing's fault, but not necessarily. These basic conclusions flow from the present state of the summary judgment record. Tersely observing that Plaintiffs' expert does not sufficiently explain his math does not help Defendants where it is their burden to show "that there is an absence of evidence in the record to support [Plaintiffs'] case." *Ross*, 164 Vt. at 18.[2] The court is therefore compelled to conclude that reasonable minds could construe the facts and circumstances relating to the proximate cause of the collision differently from defendants at this stage. *Roberts*, 147 Vt. at 163.

Based on the summary judgment record here, the court concludes Defendants are not entitled to judgment as a matter of law on their negligence claim against Mr. Arnold. See *Bates v. Rutland R. Co.*, 105 Vt. 394 (1933) (where reasonable people might draw different conclusions as to negligence or contributory negligence from the facts, even if undisputed, such questions are for the jury, and it is only when the facts are such that all reasonable people must draw the same conclusion that negligence is ever a question of law for the court).

That said, the above only stands for the proposition that Defendants are not entitled to judgment as a matter of law based on the summary judgment record as it stands at this time. Defendants' more recent filings, however, suggest they have an expert report of their own coming. See Resp. CSUMF (filed Nov. 17, 2025) at ¶¶ 1, 4–5; Discovery Deadline Stipulation at ¶ 5 (deadline to disclose experts by January 13, 2026). Should such a report contain data that, in concert with the video evidence, is capable of overcoming Plaintiffs' assertions that the court has just ruled have raised a triable issue, and in so doing bring this case on level with the circumstances in *Pratt*, Defendants are welcome to request the court's reconsideration of its decision, see *Peters v. Mindell*, 159 Vt. 424, 426 (1992) (noting that trial court has discretion in deciding whether to grant motion to reconsider grant of summary judgment), or to move for summary judgment anew, *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995) ("The denial of summary judgment has no res judicata effect, and the district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist. (citations omitted); c.f. *Morrisseau v. Fayette*, 164 Vt. 358,

---

[2] Defendants' Reply Brief appears to be raising an objection to Plaintiffs' expert's, Mr. Cei's, opinion as constituting speculation. See Reply Brief at 16–17 ("Mr. Cei's opinion and report should not be considered by the Court."). But as Defendants are surely aware, the proper way to contest the basis of an expert's opinion is through a motion to preclude or perhaps a motion in limine before a trial to allow Plaintiffs a response. A reply brief at the summary judgment stage is not a place to raise a legal argument about admissibility for the first time. See V.R.C.P. 56(b) (allowing moving party to file reply as a matter of law but providing that nonmoving party may file surreply memorandum only with leave of court). Accord e.g., *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 727 (N.D. N.Y. 2020).

364 (1995) (overruling holding that a second judge may not grant a motion for summary judgment or judgment on the pleadings after denial of a similar motion by another judge).[3]

Because the court has resolved the motion in Plaintiffs' favor, the action on behalf of the estate of Lyudmila Cushing also survives at this stage. See *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 271 (1990).

*d. Direct negligence claims against Casella*

Defendants also move for summary judgment on the direct negligence claims against Casella. They argue that there is a complete absence of evidence in the summary judgment record to support these claims. Plaintiffs apparently oppose by arguing that Casella fails to account for "federal motor carrier safety regulation 49 CFR 392.6 that prohibits motor carriers from either 'requir[ing]' or 'permit[ting]' their truck drivers to break the speed limit …." Opposition (filed Oct. 27, 2025) at 10.

Although not clear on its face, it appears that Plaintiffs suppose that the mere existence of the federal regulation[4] is evidence that Casella had a duty not to permit Mr. Arnold to speed, see *id*. ("The existence of 49 CFR 392.6 demonstrates that motor carriers are responsible for both training and supervising their drivers to comply with speed laws, as it is foreseeable that they would drive unlawfully fast to complete their work more quickly, even if this presents an unreasonable risk of injury."), and breached that duty by not implementing some mechanism to proactively monitor Mr. Arnold's speed, *id*. ("Motor carriers like Casella could have (and should have) easily met this duty. For years, they have had access to off-the-shelf equipment from companies like Lytx to proactively monitor their drivers' speed in real time.").

Even assuming *arguendo* that the federal regulation created a duty of care for Casella, the direct negligence claims Plaintiffs lodge against Casella still require independent showings of breach and causation. See *Brueckner v. Norwich University*, 169 Vt. 118, 126 (1999) (negligent supervision); see also *Driscoll*, 2024 VT 49, ¶ 1 n 1 (observing that torts "like negligent supervision" require as an element an underlying tort or wrongful act committed by the employee and citing *Haverly v. Kaytec, Inc.*, 169 Vt. 350, 357 (1999) for that proposition). Plaintiffs here have unequivocally not proffered any evidence of Casella's negligent action or

---

[3] The court should also note that just because it denies a motion for summary judgment, does not necessarily mean it cannot later at trial grant a judgment as a matter of law on the basis of identical evidence. See e.g., *Daumont-Colón v. Cooperativa de Ahorro y Crédito de Caguas*, 982 F.3d 20, 26 (1st Cir. 2020); *Sheets v. Burman*, 322 F.2d 277, 281 (5th Cir. 1963); *Sandoval v. U. S. Smelting, Ref. & Mining Co.*, 544 F.2d 463, 465 (10th Cir. 1976).

[4] 49 C.F.R. § 392.6 provides in full: "No motor carrier shall schedule a run nor permit nor require the operation of any commercial motor vehicle between points in such period of time as would necessitate the commercial motor vehicle being operated at speeds greater than those prescribed by the jurisdictions in or through which the commercial motor vehicle is being operated."

inaction in hiring, training, supervising, or retaining Mr. Arnold. Plaintiffs have not made the explicit argument, nor provided evidence, that Casella scheduled, ran, permitted, or required Mr. Arnold to operate the tractor-trailer in a way to necessitate his speeding on Vermont's roads, in violation of the federal regulation. They simply assert that they "should have" met their duty by installing some sort of device to proactively monitor their employees' speed. The plain language of 49 C.F.R. § 392.6, however, requires no such a thing.

The same is true for Plaintiffs' negligent entrustment claim. There is an absolute dearth of evidence that Casella, whether along the tenets of section 308 or 390 of the Restatement (Second) of Torts, see *Dicranian v. Foster*, 114 Vt. 372, 374 (1946); *Vince v. Wilson*, 151 Vt. 425, 428 (1989), that Casella knew or should have known Mr. Arnold intended or was likely to drive the tractor-trailer in a way to create an unreasonable risk of harm to others. As Defendants readily observe, the summary judgment instead reflects that Mr. Arnold has decades of experience as a commercial vehicle driver, and before March 2022, he had never been involved in an accident while operating a commercial vehicle. MSJ at 27.

*e. Pending discovery does not preclude grant of MSJ*

"[A] party opposing summary judgment is entitled to an adequate opportunity to engage in discovery before being required to respond to the motion." *Al Baraka Bancorp (Chicago), Inc. v. Hilweh*, 163 Vt. 148, 155 (1994) (citations omitted). Here, the court concludes that Plaintiffs have made no showing that additional discovery could help its position with respect to the claims, where the court granted judgment as a matter of law. *Id*. Although it is likely that Plaintiffs intended their discovery argument to relate to the underlying events of the collision itself, to the extent that Plaintiffs intended their argument to apply more widely, additional discovery in response to the report their expert prepared on October 24, 2025, is unlikely to help their position with respect to some action or inaction surrounding their direct liability negligence claims against Casella.

**Order**

For the foregoing reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

**Signed electronically December 12, 2025 pursuant to V.R.E.F 9(d).**

_____
**David Barra**
**Superior Court Judge**